UNITED STATES BANKRUPTCY COURT   For Publication
SOUTHERN DISTRICT OF NEW YORK
_____
              :
In re             :  Chapter 11
              :
ENRON CORP., *et al*.,      :  Case No. 01-16034 (AJG)
              :   (Confirmed Case)
      Reorganized Debtors.  :
              :
              :
_____:
              :
ENRON CORP.,        :
              :
     Plaintiff,      :
              :
     v.        :  Adv. Pro. No. 05-01029
              :
AVENUE SPECIAL SITUATIONS FUND II, LP, :
DK ACQUISITION PARTNERS, LP,   :
RCG CARPATHIA MASTER FUND, LTD.,  :
RUSHMORE CAPITAL-I, L.L.C., AND  :
RUSHMORE CAPITAL-II, L.L.C.,   :
              :
      Defendants.    :
_____:

OPINION DENYING DEFENDANTS' MOTION[1] TO DISMISS SECOND CAUSE OF
ACTION REGARDING DISALLOWANCE OF CLAIMS
HELD BY DEFENDANTS

A P P E A R A N C E S:

SUSMAN GODFREY L.L.P.
Special Litigation Counsel to the Reorganized Debtors
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096

   H. Lee Godfrey, Esq.
   Kenneth S. Marks, Esq.
   Mary Kathryn Sammons, Esq.
   James T. Southwich, Esq.
     Of Counsel

---

[1] A number of motions to dismiss were filed. When referencing such motions, the Court will use the singular form "motion."

TOGUT, SEGAL & SEGAL LLP
Attorneys for the Reorganized Debtors
One Penn Plaza, Suite 3335
New York, NY 10119

  Albert Togut, Esq.
  Scott E. Ratner, Esq.
  Richard K. Milin, Esq.
   Of Counsel

ROPES & GRAY LLP
Attorneys for DK Acquisition Partners, LP,
  RCG Carpathia Master Fund, Ltd.,
  Rushmore Capital-I, L.L.C., and
  Rushmore Capital-II, L.L.C.
45 Rockefeller Plaza
New York, NY 10111-0087

  David Elkind, Esq.
  Marc Skapof, Esq.
   Of Counsel

One International Place
Boston, MA 02110-2624

  Matthew M. Burke, Esq.
  Stephen Moeller-Sally, Esq.
   Of Counsel

ALLEN & OVERY LLP
Attorneys for Barclays Bank PLC, and its Affiliates
1221 Avenue of the Americas
New York, NY  10020

  Hugh McDonald, Esq.
   Of Counsel

SULLIVAN & CROMWELL LLP
Attorneys for Barclays Bank PLC, and its Affiliates
125 Broad Street
New York, NY  10004

  David H. Braff, Esq.
  Michael T. Tomaino, Jr., Esq.
  Jeffrey T. Scott, Esq.
   Of Counsel

CRAVATH, SWAINE & MOORE LLP
Attorneys for Credit Suisse First Boston LLC, and its Affiliates
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019-7475

Richard W. Clary, Esq.
Julie A. North, Esq.
Darin P. McAtee, Esq.
Of Counsel

MAYER, BROWN, ROWE & MAW LLP
Attorneys for Canadian Imperial Bank of Commerce, CIBC Capital Corporation,
        CIBC World Markets Corp., CIBC Capital Corporation,
        CIBC World Markets plc, and CIBC, Inc.
1675 Broadway
New York, NY  10019-5820

Robert J. Ward, Esq.
Andrew D. Shaffer, Esq.
Of Counsel

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Attorneys for Citibank, N.A.
1285 Avenue of the Americas
New York, NY  10019-6064

Stephen J. Shimshak, Esq.
Douglas R. Davis, Esq.
Of Counsel

SHEARMAN & STERLING LLP
Attorneys for Merrill Lynch & Co. Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc.,
        and Merrill Lynch Capital Services, Inc.
599 Lexington Avenue
New York, NY  10022-6069

Herbert Washer, Esq.
William J.F. Roll III, Esq.
Kristin Fitzmaurice, Esq.
Of Counsel

SEWARD & KISSEL LLP
Attorneys for Royal Bank of Canada, *et al.,*
One Battery Park Plaza
New York, NY  10004

Michael J. McNamara, Esq.
John R. Ashmead, Esq.
Mark D. Kotwick, Esq.
Of Counsel

SEWARD & KISSEL LLP
Attorneys for The Bank of New York, as Indenture Trustee
and Collateral Agent, and Yosemite/CLN Trust
One Battery Park Plaza
New York, NY  10004

Ronald L. Cohen, Esq.
John J. Galban, Esq.
Of Counsel

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
Attorneys for The Bank of New York, as Indenture Trustee
and Collateral Agent, and Yosemite/CLN Trust
1633 Broadway
New York, NY  10019

David M. Friedman, Esq.
Richard F. Casher, Esq.
Robert M. Novick, Esq.
Daniel N. Zinman, Esq.
Of Counsel

McGUIREWOODS LLP
Attorneys for The Toronto-Dominion Bank
1345 Avenue of the Americas
Seventh Floor
New York, NY  10105-0106

John H. Maddock, III, Esq.
Of Counsel

Washington Square
1050 Connecticut Avenue, N.W.
Suite 1200
Washington, DC  20036-5317

Robert Plotkin, Esq.
Dion W. Hayes, Esq.
Of Counsel

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

The matter before the Court concerns claims asserted against a bankruptcy estate that arose out of certain bank loans.  The bank, that was the original holder of the bank-loan claims in issue, is alleged to have received avoidable transfers in unrelated transactions.  The issue presented is whether the bank-loan claims, which were transferred by the original holder of the claims, would be subject to disallowance under section 502(d) of the Bankruptcy Code in the hands of a transferee.

 In order to make the determination, the Court considers two inquiries.  The first inquiry is whether the assertion of a section 502(d) disallowance should be dismissed on the ground that an avoidance action concerning the unrelated transactions has not yet been adjudicated.  The second inquiry is to what extent, if any, a claim subject to a section 502(d) disallowance in the hands of a transferor remains subject to disallowance in the hands of a transferee.

The Court concludes that a cause of action based on section 502(d) should not be dismissed even though the court has not yet adjudicated an avoidance action concerning the unrelated transactions because a debtor may, in the form of either an objection to a proof of claim or commencement of an adversary proceeding, use section 502(d) as a defense to the assertion of a claim.  Second, the Court concludes that the transfer of a claim subject to a section 502(d) disallowance in the hands of the transferor remains subject to disallowance in the hands of a transferee.  A claim in the hands of a transferee, either as an initial transferee or a subsequent transferee, remains subject to a section 502(d) disallowance defense, just as if such claim was still held by the transferor.  The

claim and the section 502(d) disallowance defense are linked, and such relationship is not severed by a transfer.

In addition, the Court concludes that the "good faith" defense contained in section 550(b) of the Bankruptcy Code, which provides a transferee of property of the estate with a defense to any attempt to recover such property or its value, cannot be extended, either directly or by analogy, to a section 502(d) disallowance action where the transferee purchased claims against a bankruptcy estate. The "good faith" defense cannot be applied directly because property of the estate was not transferred to the transferee; instead, it was a claim against the estate that was transferred. In addition, it cannot be applied by analogy because, *inter alia*, the exemption under section 550(b) only applies to a transferee who received a transfer from an initial transferee for value, in good faith, without knowledge of the voidability of the transfer. A transferee of a claim against a bankruptcy estate cannot establish such "good faith" defense when it purchased claims with knowledge of a debtor's bankruptcy status and the attendant process. Moreover, there is no dispute that such risks are routinely protected against in transfer documents for claim trading. However, whether the purchaser of a claim protects itself is not an issue with which the Court need be involved. To the extent that a potential purchaser may not be able to adequately protect itself, it can decide not to purchase or demand a price at a level that reflects the perceived risks. In any event, any specialized protection for claim transferees is left to Congress.

Enron's cause of action based on disallowance under section 502(d) of the Bankruptcy Code is sufficient to withstand a motion to dismiss. Therefore, Defendants'

motion to dismiss based upon the alleged inapplicability of section 502(d) to the bank-loan claims in the hands of a transferee is denied.

## FACTS

Commencing on December 2, 2001 (the "Petition Date"), and from time to time continuing thereafter, Enron Corporation ("Enron") and certain of its affiliated entities, (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On July 15, 2004, the Court entered an Order confirming the Debtors' Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors (the "Plan") in these cases. The Plan became effective on November 17, 2004.

As a borrower, Enron entered into a $1,750,000,000 364-day Revolving Credit Agreement (the "Short-Term Credit Agreement"), dated May 14, 2001, and a $1,250,000,000 Long-Term Revolving Credit Agreement (the "Long-Term Credit Agreement"), dated May 18, 2000, (collectively, the "Credit Agreements") with certain participating banks (the "Banks"), among them, Citibank, N.A. ("Citibank") as paying agent, and Citibank and Chase Manhattan Bank ("Chase") as co-administrative agents. Fleet National Bank ("Fleet") loaned Enron $53,666,666.67 as one of the Banks participating in the Short-Term Credit Agreement.

On October 15, 2002, the Court authorized Citibank to file two proofs of claim (Claim Nos. 14179 and 14196) in its capacity as paying agent on behalf of certain creditors, including Fleet, under the Credit Agreements. Citibank sought a consolidated secured claim in the amount of $1,754,024,000, plus unliquidated amounts for the principal and unpaid interest under the Short-Term Credit Agreement and a consolidated

secured claim in the amount of $1,253,196,000, plus unliquidated amounts for the principal and unpaid interest under the Long-Term Credit Agreement.

As of the Petition Date, Fleet was the original holder of the claims asserted in the instant action (the "Claims"). The Claims were ultimately transferred to Avenue Special Situations Fund II, LP ("Avenue"), DK Acquisition Partners, LP ("DK"), RCG Carpathia Master Fund Ltd. ("RCG"), Rushmore Capital-I, L.L.C. ("Rushmore I") and Rushmore Capital-II, L.L.C. ("Rushmore II") (collectively, the "Defendants").

On August 22, 2002, Fleet sold to Avenue $10 million of the principal amount of the Claims under the Short-Term Credit Agreement. On October 24, 2002, Fleet sold to Credit Suisse First Boston ("CSFB") $29.5 million of principal amount of the Claims under the Short-Term Credit Agreement. On March 12, 2002, Rushmore I acquired from Goldman Sachs Credit Partners $10 million of principal amount of the Claims originally held by Fleet under the Short-Term Credit Agreement. On May 25, 2002, Rushmore II acquired from Chase $2.75 million of principal amount of the Claims originally held by Fleet under the Long-Term Credit Agreement.

On November 27, 2002, CSFB sold to RCG $5 million of principal amount of the Claims under the Short-Term Credit Agreement. On December 3, 2002, CSFB sold to Avenue $10 million of principal amount of the Claims under the Short-Term Credit Agreement. On March 12, 2003, CSFB sold to DK $14.5 million of principal amount of the Claims under the Short-Term Credit Agreement.

On September 23, 2003, Enron commenced an adversary proceeding (the "Megacomplaint Proceeding," Docket No. 03-09266) against the Banks. On December 1, 2003, April 30, 2004, June 14, 2004 and January 10, 2005, Enron filed the first,

8

second, third and fourth amended complaints in the Megacomplaint Proceeding,

respectively.  In the fourth amended complaint, Enron named Fleet as one of the principal

banks in certain preference and fraudulent conveyance causes of action relating to two

series of prepaid forward transactions, the so called "December 2000 Mahonia Pre-pay

Transaction" and "Project Bacchus," into which Fleet and an entity organized by Fleet

had been brought as participants by Chase and Citibank, respectively.  In that complaint,

Enron alleges that Fleet and the entity organized by Fleet received partial repayments of a

portion of the more than $171 million which they had provided as part of these two

prepaid forward transactions, and that these partial repayments allegedly constituted

preferences or fraudulent conveyances.

However, neither in the Megacomplaint Proceeding nor in this adversary

proceeding does Enron allege that there was any fraudulent or unlawful conduct under

the Credit Agreements, or that any payments of principal or interest with respect to the

loans under the Credit Agreements constitute preferences or fraudulent conveyances.

Further, Enron did not repay any portion of the loans under the Credit Agreements to the

Banks prior to the Petition Date.

On January 12, 2005, Enron commenced this adversary proceeding, seeking to

disallow the Claims held by Fleet as of the Petition Date against the Debtors' estate, and

subsequently transferred to and asserted by the Defendants.  In the complaint filed in this

adversary proceeding (the "Complaint"), Enron seeks relief based on two causes of

action.  The first is based on the principles of equitable subordination.  The second is

based on the disallowance of claims or interests under section 502(d) of the Bankruptcy

Code.  The first cause of action was addressed in a separate opinion by the Court dated

November 17, 2005.

      With respect to the second cause of action, Enron asserts that under section

502(d), the Claims should be disallowed unless Fleet, or the Defendants, turns over all

transferred property, for which it is liable under sections 542, 543, 550, or 553 of the

Bankruptcy Code, or pays the value of such property.  Enron argues that the Claims

would have been disallowed, had the Claims not been transferred from Fleet to the

Defendants, and further, that because the Defendants are transferees[2] who take subject to

any defense, the Defendants' Claims should be disallowed to the same extent as if Fleet

had continued to hold the Claims.

      On May 18, 2005, the Defendants[3] filed a motion to dismiss the adversary

proceeding, pursuant to Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.")

7012(b) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), for failure to

state a claim (hereinafter, references to the Defendants only include the moving

defendants).  The Defendants contend that the sole basis of the disallowance cause of

action asserted is the allegation that Fleet, not the Defendants, allegedly received

preferences or fraudulent conveyances from Enron in two prepaid forward transactions

that are unrelated to the Claims stemming from the Credit Agreements.  No allegation is

made in the Complaint that any of the Defendants received any preferences or fraudulent

conveyances or that the Credit Agreements were part of any fraudulent conduct.  Further,

---

[2] For purposes of this Opinion, "transferee", unless specifically defined otherwise, refers to any initial transferee or any immediate or mediate transferee, including subsequent transferees of an immediate transferee.

[3] Avenue answered the Complaint on April 1, 2005.  In its answer, Avenue stated that Enron's Complaint should be dismissed based on its failure to state a claim upon which relief may be granted.  However, the Court's review of the docket of this adversary proceeding reveals that Avenue did not move or join with the other Defendants to dismiss Enron's Complaint by the motion before the Court.  Therefore, Avenue is not a moving defendant in the motion.

the Defendants argue that the Bankruptcy Code permits section 502(d) disallowance of a

claim only when that claim is asserted by an entity adjudicated to be liable for the return

of property under other sections of the Bankruptcy Code and only after that entity fails to

return the property.  Here, the Defendants claim that the avoidance action has not been

adjudicated yet and the adjudication of such avoidance action is a prerequisite for the

Court to apply section 502(d).  Thus, the Defendants conclude that the Claims should not

be subject to disallowance because the Defendants do not fit within the plain language or

the conditions of section 502(d).

Pursuant to section 1109(b) of the Bankruptcy Code and the Court's Coordinated

Scheduling and Intervention Order (the "Scheduling Order"), dated April 27, 2005,

Barclays Bank PLC, Canadian Imperial Bank of Commerce, Citibank, N.A., CSFB,

Merrill Lynch & Co., Inc., Royal Bank of Canada and The Toronto-Dominion Bank

submitted a memorandum of law, dated July 15, 2005, in support of the Defendants'

motion to dismiss the adversary proceeding.  Additionally, pursuant to the Scheduling

Order, The Bank of New York as Indenture Trustee and Collateral Agent for Yosemite

Securities Trust I and Yosemite Securities Company, Ltd., together with Enron Credit

Linked Notes Trusts submitted a memorandum of law in support of the Defendants'

motion to dismiss filed in the Coordinated Actions.[4]

A hearing on this matter was held before the Court on August 9, 2005.

---

[4] Under the Scheduling Order, the term "Coordinated Actions" is defined to include certain adversary
proceedings regarding financial institutions and their transferees, including the Defendants.  By that order
the adversary proceedings are coordinated before the Court for the purposes of adjudicating the issues
raised in any motion to dismiss, motion on the pleadings, motion for summary judgment or for partial
summary judgment in connection therewith.

**DISCUSSION**

Fed. R. Civ. P. 12(b)(6) is incorporated into bankruptcy procedure by Fed. R.

Bankr. P. 7012(b).  In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure

to state a claim for relief, a court accepts as true all material facts alleged in the complaint

and draws all reasonable inferences in favor of the plaintiff.  *Walker v. City of New York*,

974 F.2d 293, 298 (2d Cir. 1992).  A motion to dismiss is granted only if no set of facts

can be established to entitle the plaintiff to relief.  *Id.*

In considering such a motion, although a court accepts all the factual allegations

in the complaint as true, the court is "not bound to accept as true a legal conclusion

couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Thus,

where more specific allegations of the complaint contradict such legal conclusions,

"[g]eneral, conclusory allegations need not be credited."  *Hirsch v. Arthur Andersen &

Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995).  Rather, to withstand a motion to dismiss, there

must be specific and detailed factual allegations to support the claim.  *Friedl v. City of

New York*, 210 F.3d 79, 85-86 (2d Cir. 2000).

"Although bald assertions and conclusions of law are insufficient, the pleading

standard is nonetheless a liberal one." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.

1998).  Pursuant to Fed. R. Civ. P. 8(a), which is made applicable to adversary

proceedings by Fed. R. Bankr. P. 7008, in asserting a claim, the pleader need only set

forth a short and plain statement of the claim showing that the pleader is entitled to relief.

The purpose of the statement is to provide "fair notice" of the claim and "the grounds

upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The simplicity required

by the rule recognizes the ample opportunity afforded for discovery and other pre-trial

procedures, which permit the parties to obtain more detail as to the basis of the claim and as to the disputed facts and issues. *Id*. at 47-48. Based upon the liberal pleading standard established by Fed. R. Civ. P. 8(a), even the failure to cite a statute, or to cite the correct statute, will not affect the merits of the claim. *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir. 1997).

In reviewing a Fed. R. Civ. P. 12(b)(6) motion, a court may consider the allegations in the complaint; exhibits attached to the complaint or incorporated therein by reference; matters of which judicial notice may be taken; *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); and documents of which plaintiff has notice and on which it relied in bringing its claim or that are integral to its claim. *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). However, mere notice or possession of the document is not sufficient. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Rather, a necessary prerequisite for a court's consideration of the document is that a plaintiff relied "on the terms and effect of a document in drafting the complaint." *Id*. As such, the document relied upon in framing the complaint is considered to be merged into the pleading. *Id*. at 153 n.3 (citation omitted). In contrast, when assessing the sufficiency of the complaint, the court does not consider extraneous material because considering such would run counter to the liberal pleading standard which requires only a short and plain statement of the claim showing entitlement to relief. *See* Fed. R. Civ. P. 8(a); *Chambers,* 282 F.3d at 154. Nevertheless, in considering a Fed. R. Civ. P. 12(b)(6) motion, a court may consider facts as to which the court may properly take judicial notice under Rule 201 of the Federal Rules of

Evidence ("Fed. R. Evid."). *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 383 n.3 (S.D.N.Y. 2003)(citing *Chambers*, 282 F.3d at 153).

To survive a motion to dismiss, a plaintiff only has to allege sufficient facts, not prove them. *Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999). A court's role in ruling on a motion to dismiss is to evaluate the legal feasibility of the complaint, not to undertake to weigh the evidence, which may be offered to support it. *Cooper*, 140 F.3d at 440 (citations omitted).

Thus, for the purposes of the Motion to Dismiss, the Court accepts as true all of the material allegations in the Plaintiff's complaint. Further, for purposes of this motion, the Defendants do not dispute any of the factual allegations regarding Fleet. The focus of the Defendants' motion is that, even if such allegations were true, the cause of action for disallowance of a claim fails as a matter of law.

*Parties' Contentions*

Citing *In re Metiom, Inc.,* 301 B.R. 634 (Bankr. S.D.N.Y. 2003), Enron argues that the plain language of section 502(d) of the Bankruptcy Code supports its contention that the section applies to transferred claims and mandates the disallowance of the claim of any entity that owes property to the estate. Further, Enron argues that the plain language of this section, which uses the phrase "claim of," includes "claim acquired by," not merely "claim asserted by," a party. Enron urges that any other interpretation would render the statute absurd or futile.

Enron contends that the legal effect of disallowing a claim in the hands of a transferor should not be altered by the transfer of such claim. Otherwise, Enron argues,

the result would not be consistent with the long-standing legal principle that a transferee receives no more than the transferor possesses.

In addition, Enron argues that because the threat of claim's disallowance coerces creditors to return property of the estate, the Court should not permit "claims washing" - a practice by which creditors sell their claims to avoid the threat of claim disallowance. Enron argues that the Court should not limit a debtor's resort to section 502(d) merely because another source of recovery for loss may be available by demanding indemnities under a claim-transfer agreement. Further, Enron argues that limiting the scope of the section 502(d) defense would be contrary to public policy and congressional intent. Finally, Enron argues that the Defendants were not good faith purchasers because the focus of section 502(d) is on the conduct of the original holder of the Claims.

Pursuant to Fed. R. Civ. P. 12(b)(6), incorporated into bankruptcy procedure by Fed. R. Bankr. P. 7012(b), the Defendants move to dismiss the Complaint as a matter of law based upon their contention that section 502(d) does not apply to the Defendants. Specifically, they contend that they are not entities "from which property is recoverable under section 542, 543, 550, or 553 of this title" nor are they "a transferee of a transfer avoidable under section 522(f), 522(h), 544, 547, 548, 549, or 724(a) of this title" within the plain language of section 502(d) of the Bankruptcy Code. Further, the Defendants argue that section 502(d) contemplates that the entity holding the claim, or its transferee, will be the entity that has liability under section 522(i), 542, 550, or 553 and that holds the property to be returned. Here, they contend that they merely bought bank-loan claims, which are unrelated to the pre-paid forward transactions from which Fleet is alleged to have received a preference or a fraudulent conveyance. Moreover, no

avoidance action related to bank-loan claims is brought by Enron against the Defendants.
As a result, the Defendants argue that the prerequisites to the application of section
502(d) have not been met.

Further, citing case law, such as *Maxwell Communication Corp. PLC v. Societe
Gen. PLC et al.* (*In re Maxwell Communication Corp.*), 186 B.R. 807, 824 (S.D.N.Y.
1995), the Defendants assert that the Bankruptcy Code permits disallowance of a claim
only when that claim is made by an entity adjudicated to be liable for the return of
property under other sections of the Code and only after that entity fails to return the
property. Moreover, the Defendants assert that rather than supporting Enron's argument,
the *Metiom* court concluded that section 502(d) disallows a claim, only when an entity
received an avoidable transfer, while it held the claim. In addition, the Defendants argue
that the language of section 502(d) does not apply to a transferee because the purpose of
section 502(d) is not to punish, but to coerce the holder of a claim, which itself holds an
avoidable transfer, to comply with judicial orders requiring it to return the avoidable
transfer. Here, the Defendants argue that in the real world, the party who received the
preference or avoidable transfer would return the smaller amount of the avoidable
transfer to the debtor in exchange for allowance of their larger claims.

Lastly, the Defendants argue that because 502(d) refers to 550(b) of the
Bankruptcy Code, the rights of a good faith purchaser, including a claim purchaser, are
protected in section 502(d). The Defendants argue that various sections of the
Bankruptcy Code, including 550(b), embody a policy against holding an innocent
transferee liable for avoidable transfers. Section 550(b) of the Bankruptcy Code provides
that when the initial transferee of a debtor's property transfers such property to a third

party, a trustee may not recover the debtor's property from that subsequent transferee if the subsequent transferee purchased the property in good faith. The Defendants also argue that the inclusion of indemnity provisions in privately negotiated contracts does not imply that section 502(d) should apply, nor does it imply that Congress intended to require private parties to negotiate indemnities. In addition, the Defendants direct the Court's attention to the fact that, in the instant case, Enron has sought a remedy against Fleet in the Megacomplaint Proceeding. The Defendants maintain that Fleet is a solvent financial institution that will be bound by any judgment requiring it to return allegedly avoidable or preferential transfers arising out of the two prepaid forward transactions. As a result, the Defendants contend that applying section 502(d) to a transferee who never received an avoidable transfer is abusive. The Defendants further argue that Congress did not set up a statutory regime which allows them to be sued.

As a matter of public policy, the Defendants argue that a judicial holding that a good faith transferee can be subject to disallowance solely on the basis of the transferor's conduct and long after the initial bankruptcy petition was filed would both introduce multiple layers of litigation against subsequent innocent transferees, and seriously and needlessly impact liquidity in the market for post-petition transfers of claims. Further, the Defendants argue that such a holding would contradict congressional intent to exempt good faith transferees, as evidenced by section 550(b) of the Bankruptcy Code.

Enron asserts that a purchaser of a claim is not a "good faith" purchaser and any innocence in the claim purchasing is not relevant to a determination of whether a claim is subject to disallowance. Rather, Enron contends that the focus under section 502(d) is the claim and not the entity from which property is recoverable. Enron maintains that a

contrary ruling would encourage "claim washing" by allowing creditors who received

avoidable transfers and do not return these transfers to the estate to profit at the expense

of the estate creditors who are unprotected.  In addition, Enron contends that a judicial

holding that the Claims are allowed under the circumstance presented herein would

render section 502(d) nugatory.

*Disallowance*

The issue presented is whether the Claims transferred by the original holder,

Fleet, ultimately to the Defendants, are subject to disallowance under section 502(d) of

the Bankruptcy Code.  As stated previously, in order to make that determination, the

Court considers two inquiries.  The first inquiry is whether Enron's disallowance cause of

action based upon section 502(d) should be dismissed became the Court has not yet

adjudicated the avoidance action that forms the basis of the section 502(d) disallowance.

The second inquiry is to what extent, if any, a claim subject to disallowance in the hands

of a transferor remains subject to disallowance in the hands of a transferee.  In addition,

the Court will determine whether the Defendants can assert the "good faith" defense of

section 550(b) of the Bankruptcy Code, either directly or by analogy, to an attempt to

disallow their claims under 502(d).

I.    *The Adjudication of an Avoidance Action*

The Court first examines whether a prerequisite to asserting a section 502(d)

disallowance is that a debtor obtain a judicial order concerning the avoidance action upon

which the disallowance is predicated.

Section 502(d) of the Bankruptcy Code provides that

> [T]he court shall disallow *any claim of any entity from*
> *which property is recoverable* under section 542, 543, 550,

> or 553 of this title or *that is a transferee of a transfer avoidable* under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d) (emphasis added).

The language of section 502(d) explicitly refers to "a transfer *avoidable,*" rather than "an *avoided* transfer" or "claims that have been *avoided.*" *See* 4 Collier on Bankruptcy, ¶ 502.05[2][a] (15th Ed. 2005). It is well-established that "there is no prohibition against the trustee's asserting section 502(d) as an affirmative defense to a claim of a creditor even if the trustee's claim is time-barred or otherwise nonrecoverable. Thus, there is no guarantee that a claim will be allowed just because a voidable transfer held by the claimant has not been avoided." *Id.; See also In re Metiom, Inc.* 301 B.R. 634, 639 (Bankr. S.D.N.Y. 2003).

Here, the avoidance action against Fleet has not yet been adjudicated. In addition, rather than interposing its 502(d) defense as an objection to the relevant proofs of claim, Enron asserts its section 502(d) disallowance as a cause of action regarding the Claims in the instant adversary proceeding. However, a debtor's right to assert an affirmative defense under section 502(d) is not lost simply because of the form in which the debtor chooses to file its objection to a claim, whether by an adversary proceeding or by an objection to the proof of claim. Despite the difference underlying these two forms of proceeding, section 502(d) remains an affirmative defense for a debtor to prevent distribution to a creditor who filed a claim against the debtor and is alleged to have received an avoidable transfer.

Collier on Bankruptcy states that "the purpose of section 502(d) is to promote the pro-rata sharing of the bankruptcy estate among all creditors and the coercion of the payment of judgments obtained by the trustee." *Id*. (citations omitted).  It continues that "to assure the effectuation of the purpose of section [502(d)], a claim may be disallowed at least temporarily and for certain purposes, subject to reconsideration, simply upon the allegation of an avoidable transfer." *Id*. at 59.

Case law supports the proposition that a debtor may file an adversary proceeding, instead of an objection to a proof of claim, to assert a section 502(d) defense.  *See* Collier on Bankruptcy which states that "there is no prohibition against the trustee's asserting section 502(d) as an affirmative defense to a claim of a creditor . . . ."  *See* 4 Collier on Bankruptcy, ¶ 502.05[2][a]; *see also Id*. n.5 (citing *Robert Brown v. United States Internal Revenue Serv. (In re Larry's Marineland of Richmond Inc.)*, 166 B.R. 871, 874-75 (Bankr. E.D. Ky. 1993) (which concludes that the "inability of trustee to obtain affirmative monetary recovery does not prevent operation of section 502(d)")); *In re Odom Antennas, Inc.,* 340 F.3d 705 (8th Cir. 2003); *Marketing Resources International Corp. v. PTC Corp. (In re Mktg. Res. International Corp.),* 35 B.R. 353 (Bankr. E.D. Pa. 1984).  Thus, by commencing an adversary proceeding with a section 502(d) cause of action, Enron can raise an affirmative defense to a distribution to the Defendants.

It has been stated that in order for a trustee to prevail on a section 502(d) objection to a claim, it must obtain a determination in its favor on the underlying avoidance action.  *See In re Atlantic Computer Sys.,* 173 B.R. 858, 862 (S.D.N.Y. 1994) (holding that section 502(d) "envisions some sort of determination of the claimant's liability before its claims are disallowed, and in the event of an adverse determination, the

provision of some opportunity to turn over the property"); *see also, Maxwell* 186 B.R. at

824 (stating that "section 502(d) permits disallowance of a claim only when that claim is

made by an entity already adjudged to be liable for the return of property under other

sections of the Bankruptcy Code and only after that entity fails to return the property");

*In re Mktg. Res. International Corp.,* 35 B.R. at 356 (stating that "the application 502(d)

of the Bankruptcy Code is premature since judgment has not yet been entered on the

debtor's actions under §§ 547 and 542."); *In re Odom Antennas, Inc.,* 340 F.3d at 708

(citing that a claim should be disallowed after the entity is first adjudicated liable); *In re*

*Lids Corp.,* 260 B.R. 680, 684 (Bankr. Del. 2001) (holding that "the [d]ebtor has merely

commenced an adversary proceeding; that is not enough to determine that [the claimant]

is liable.").

In the instant motion, however, the Court must only determine whether Enron

asserts a valid cause of action under section 502(d) to survive a motion to dismiss and not

whether the Claims are disallowed based on the merits of the underlying avoidance

actions.  Allowing Enron's section 502(d) disallowance cause of action in this adversary

proceeding to remain viable does not impact any of Fleet's defenses concerning the

avoidance action and is not a determination of the merits of that action.  Further, a final

determination on the disallowance cause of action in this adversary proceeding is not to

be reached until there is a judicial determination as to the merits of the avoidance actions.

*See Metiom, Inc.*  301 B.R. at 641-42.

Nevertheless, prior to the Court's final determination on the merits of the

avoidance action, Enron's affirmative defense against the Claims under section 502(d)

remains viable after this proceeding.  Thus, as a result of the posture of this case, the

court must consider an additional element that was not present in the context of those cases where a final disallowance was deemed impermissible until the conclusion of the litigation concerning the underlying avoidance action. As Enron's cause of action remains viable, the transfer continues as one "avoidable" under the avoidance actions sections of the Bankruptcy Code, and the Defendants' Claims continue to be disputed claims, pending adjudication of the predicate avoidance action. In other words, until a determination of the merits of the pending avoidance action, the distribution to the Defendants is temporarily prevented as is the case with any claim subject to a pending objection.[5]

The Court's position is supported by the order entered in *Ames Dep't Stores, Inc., v. ASM Capital, LP (In re Ames Dep't Stores),* 06 Civ. 0471(LAK) (Chapter 11 case No. 01-42217 (REG)). In the *Ames* case, the United States District Court for the Southern District of New York denied an interlocutory appeal of an order, issued on December 5, 2005, regarding disallowance of administrative expense claims under section 502(d) of the Bankruptcy Code. *Id.* The District Court denied leave to appeal on the ground that the order was not final because the *Ames* court had not adjudicated the merits of the transferor's avoidance action. That court concluded that the claims held by a claim

---

[5] If the Defendants' positions were adopted and the section 502(d) action were dismissed because the underlying avoidance action had not yet been adjudicated, then in effect those claims would be allowed claims. One cannot lose sight of the fact that a section 502(d) action, even if brought as an adversary proceeding, is an objection to claim. As a result, the claim is a disputed claim until the objection is resolved – hence, no distribution could take place until the claim was allowed.

  If a claimant for which a section 502(d) disallowance were pending received a distribution, then such claimant would receive treatment different from that received by other claimants with pending objections to their claims. Such claimant is holding a disputed claim. A claimant with a disputed claim does not receive a distribution, until its claim is determined to be allowed in whole, or part. Further, there is no distribution to such creditor if the debtor's objection is granted. If a debtor were required to make a distribution to a claimant, where a section 502(d) action were pending either by objection or by adversary proceeding, then the debtor would have to seek disgorgement, among other relief, from such claimant if the debtor were ultimately to prevail in the underlying avoidance action.

transferee are temporarily disallowed until (i) the avoidance action against the transferor

is resolved, and (ii) the transferor has paid over any amount for which it is liable to the

debtor. *See Id.*[6]

Therefore, although the Court has not yet adjudicated the underlying avoidance

action against Fleet, the Court's determination not to dismiss Enron's disallowance cause

of action recognizes that the cause of action remains viable awaiting the determination of

the underlying avoidance action against Fleet. However, no distribution can be made to

the Defendants with respect to the Claims pending a resolution of their disputed claims.

II.      *Application of Disallowance to Transferred Claims*

1.      Application of Section 502(d)

The Defendants cite to Collier on Bankruptcy to support their position that section

502(d) of the Bankruptcy Code does not focus on the claims, but on who holds the claims.

The Defendants argue that application of 502(d) requires that the party both holds a claim

and received a preference or a fraudulent conveyance. According to the Defendants, the

plain language of section 502(d) supports the position that a claim is disallowed if the

holder of that claim is subject to an action by the trustee for the avoidability of a transfer

or the recovery of property. Thus, they assert that the focus of this section is upon the

creditors who received the avoidable transfers. The Defendants argue that once a party

owes the avoidable property to the debtor, the liability remains with that party, even after

a claim once held by that party is transferred.

---

[6] The Court does not take a position regarding whether section 502(d) of the Bankruptcy Code is applicable to an administrative claim or, if it is applicable, whether the payment to satisfy an avoidable transfer must come from the transferor. Rather, the case is cited only for the proposition that in applying section 502(d), a claim that would otherwise be subject to section 502(d) can be temporarily disallowed when held by a transferee until the underlying avoidance action is resolved and payment, if due, of the avoidable transfer is made.

According to the Defendants, the *Metiom* court actually agreed with their section 502(d) statutory interpretation by stating that a claim is disallowed "provided that an entity received an avoidable transfer while it held the claim." *Metiom*, 301 B.R. at 642. The Defendants, therefore, argue that the Claims should be allowed because the Defendants did not receive any avoidable transfer while they held the Claims.

Enron does not dispute that the Defendants did not receive an avoidable transfer while they held the Claims. However, the holding in *Metiom* is that a claim is disallowed in the hands of a transferee provided that the transferor received an avoidable transfer while it held the claim. This is because the transfer of a claim does not alter the characteristics of a claim, which is a right to payment or a remedy against the debtor[7] that arose from the transaction between the transferor and the debtor.

In *Metiom*, Intira received from Metiom a $170,000 payment on account of an antecedent debt on March 19, 2001, which payment was later alleged to be an avoidable transfer. *See Metiom*, 301 B.R. at 637. Intira filed a proof of claim on July 9, 2001. *Id.* On September 30, 2001, divine Acquisition Inc.[8] took over substantially all of Intira's assets, including the claim in dispute. *Id.* The following is the summary of the transactions in *Metiom*

---

[7] Section 101(5) of the Bankruptcy Code provides that "claim" means-

| (A) | right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or |
| (B) | right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. |

11 U.S.C. §101(5).

[8] As indicated in *Metiom*, "divine Acquisition Inc." is spelled with a lower-case letter "d."

- March 19, 2001, Intira allegedly received from Metiom an avoidable transfer in the amount of $170,000 debt payment
- May 16, 2001, Metiom filed its chapter 11 petition
- July 9, 2001, Intira filed a proof of claim in the amount of $752,498 against Metiom; but the amount was reduced to $659,826
- September 30, 2001, divine took over substantially all of Intira's assets, including the claim in dispute
- July 19, 2002, the trustee filed an objection to Intira's claim based on section 502(d)

*Metiom*, 301 B.R., at 636-38; *see also,* Docket Nos. 347 and 351, respectively, Case No. 01-12840 available on online at ECF of the United States Bankruptcy Court for the Southern District New York.

The *Metiom* court rejected divine's argument that the proof of claim should be allowed because it (divine) did not hold the avoidable transfer. *Id.* at 642. Instead, the *Metiom* court found that "section 502(d) disallows the claim unless the entity that held the claim when it received an avoidable transfer pays the amount for which it is liable." *Id.* at 643. Based on that analysis, the *Metiom* court concluded that the claim in the hands of divine was disallowable unless Intira - which had a claim, a right to payment against Metiom dating back to March 2001 when Intira received a preferential transfer - returned the amount for which Intira was liable.

No case has been brought to the Court's attention that requires that, in applying a section 502(d) disallowance, the avoidable transfer must be received after a creditor acquires a claim. In a preference action, as was involved in *Metiom*, it is clear that a debtor-creditor relationship would exist prior to the transfer at issue. However, this would not necessarily be the case regarding an alleged fraudulent conveyance. A fraudulent transfer may be made prior to any debtor-creditor relationship existing between the transferee of the avoidable transfer and the pre-petition debtor. Imposing a

25

requirement that an avoidable transfer be incurred after a creditor holds a claim is not required by statute or case law.

Also, section 502(d) of the Bankruptcy Code explicitly authorizes a bankruptcy court to disallow "any claim of any entity from which property is recoverable." *See*, 11 U.S.C. § 502(d). This statutory reference is to *any claim*. There is no requirement that a claim subject to a section 502(d) disallowance be related to an avoidable transfer. Here, the Claims arose out of certain bank-loan transactions, which are not related to the alleged avoidable transfers at issue in the instant adversary proceeding. However, pursuant to the statutory language of section 502(d), this does not prevent Enron from seeking disallowance of the Claims.

Moreover, where an entity, subject to an avoidance action, holds a claim - a right to payment or remedy - against the debtor and transfers such claim, the section 502(d) disallowance applies to the transferred claim unless and until the amount owed to the estate as a result of the avoidance action is received by the bankrupt estate. The Court has not found any case law[9] mandating that the creditor who received an avoidable transfer be the same entity that actually asserts such claim against the debtor in the bankruptcy proceeding in order for a debtor to assert a section 502(d) disallowance against such claim. In the instant case, the Defendants are holders by transfer[10] of claims

---

[9] The Court notes that in the unpublished opinion discussed in footnote 15, one could conclude that that court found such "mandate." *See Section 1102(A)(1) Comm. of Unsecured Creditors v. Williams Patterson, Inc. (In re Wood & Locker, Inc.),* No. MO 88 CA 011, 1988 U.S. Dist. LEXIS 19501 (W.D. Tex. 1988).

[10] The Bankruptcy Code defines transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property . . . ." 11 U.S.C. § 101 (54). According to the legislative history of § 101 (54), "the definition of transfer is as broad as possible. . . Under this definition, any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title, because possession, custody, and control are interests in property." *In re Watman*, 301 F. 3d 3 (1st Cir. 2002) (citing S. Rep. No. 95-989, at 27 (1978)). In bankruptcy, an assignment is defined as "a transfer or making over to another of the whole

of Fleet, which were held by Fleet when it received the alleged avoidable transfers.  Since

the Claims in the hands of Fleet would be subject to section 502(d) disallowance, the

Defendants, as transferees, would be subject to the same claim disallowance under

section 502(d).

Further, the Court disagrees with the Defendants' contention that the focus of

section 502(d) is upon the creditors currently holding the claims against the debtor.  It is

well-established that "section 502(d) does not deal with proofs of claim." 4 Collier on

Bankruptcy, ¶ 502.05, at 57.  The bankrupt estate can demand a creditor to surrender any

avoidable transfers even in a circumstance where such creditor does not file a proof of

claim against the debtor and thereby waives any distribution from the estate.  *See Id.*

Rather, section 502(d) focuses on the creditors' right to share in the distribution of the

debtor's assets.  *See Schwartz v. Levine & Malin, Inc*., 111 F.2d 81 (2d Cir. 1940).

The identity of the holder of a claim is irrelevant[11] when the estate takes action

against such claim under section 502(d) because "[t]he claim and the defense to the claim

under section 502(d) cannot be altered by the claimant's subsequent assignment of the

claim to another entity . . . that has not received an avoidable transfer."[12] *Metiom,* 301

---

of any property, real or personal, in possession or in action, or of any estate or right therein."  *In re Oglesby*, 2000 WL 33943203 at *3 (Bankr. S.D. Ga. 2000) (citing Black's Law Dictionary 109 (5th ed. 1979)).  An "assignment is an outright transfer" of an entire claim.  *See, Id.* at *4.  Thus, the law regarding a claim transfer in bankruptcy includes a claim assignment in its application.  None of the parties in the instant proceeding draws a legal or factual distinction between "assignment of a claim" and "transfer of a claim" in the bankruptcy.

[11] Citing to *Maxwell*, the Defendants argue that because section 502(d) is not applicable to them because they did not receive avoidable transfers.  The *Maxwell* court held that that in order for a claim to be disallowed under section 502(d), "the transferee must have received a 'transfer avoidable' under section 547 of the Bankruptcy Code."  *Maxwell*, 186 B.R. at 824.  In *Maxwell*, the transferee was the recipient of a transfer of property that was avoidable under section 547 of the Bankruptcy Code, rather than the purchaser of a bankruptcy claim that is subject to section 502(d).  Therefore, the holding in *Maxwell* is not applicable to the instant case because the *Maxwell* court did not consider the scenario of a section 502(d) disallowance of a claim held by a claim transferee.

[12] The Defendants argue that *Metiom* is factually distinguishable from the instant case.  *See*, Memorandum of Law of the Yosemite/CLN Trusts and the Bank of New York, as Indenture Trustee and Collateral Agent,

B.R. at 643. *See also, Swarts v. Siegel*, 117 F.13, 15 (8th Cir. 1902). The *Swarts* court

concluded that "the disqualification of a claim for allowance created by a preference

inheres in and follows every part of the claim, whether retained by the original creditor or

transferred to another, until the preference is surrendered." *Id.* In *Swarts,* the claimant

purchased the promissory notes from the bank that received a $14,600 preference. *Id.* at

15-17. The value of the notes in issue was $35,000, and the claimant asserted a claim in

that amount against the debtor. *Id.* The *Swarts* court held that this claim was disqualified

for allowance in the hands of the claimant "until the $14,600 was repaid to the same

---

in Support of the Motions to Dismiss Filed in the Coordinated Actions and in Opposition to the Debtors'
Summary Judgment Motion Filed in the Mega Claim Litigation dated on May 20, 2005, *17. The
Defendants state that in *Metiom,* the claim objection was filed prior to the assignment of the claim by Intira
to divine, as opposed to the instant case where the commencement of the adversary proceeding against
Fleet occurred after the transfer of the Claims. *See Id.* at *18. They argue that the factual difference limits
the holding of *Metiom* that "the defense to the claim under section 502(d) cannot be altered by the
claimant's subsequent assignment of the claim to another entity . . . that has not received an avoidable
transfer." *Metiom*, 301 B. R. at 643. In their view, the *Metiom* holding stands for the limited proposition
that "if an assignment of a claim occurs 'subsequent' to the date on which a claim objection based upon
section 502(d) is filed with respect to the claim . . . such an assignment does not immunize the claim from
disallowance under section 502(d)." *Id.*

However, in *Metiom*, the Defendants' assertion that the claim objection under section 502(d) was filed
prior to the assignment is incorrect. *See, Metiom*, 301 B.R., at 636-38. The *Metiom* docket establishes that
the trustee under the liquidating chapter 11 plan of *Metiom* filed its objection to the claims 10 and 24 in the
Claim Objection in *Metiom* under section 502(d) on July 19, 2002 (Docket Nos. 347 and 351, respectively,
Case No. 01-12840), more than nine months after the assignment of the claims from Intira to divine
(although, there was apparently no Rule 3001 filing regarding the transfer, the objection was filed after the
transfer of the claim under the Intira's asset sale to divine approved by the Intira's bankruptcy court). The
following is the summary of the transactions in *Metiom*
- March 19, 2001, Intira alleged received from Metiom an avoidable transfer in
  the amount of $170,000 debt payment
- May 16, 2001, Metiom filed its chapter 11 petition
- July 9, 2001, Intira filed a proof of claim in the amount of $752,498; but the
  amount was reduced to $659,826
- September 30, 2001, divine took over substantially all of Intira's assets,
  including the claim in dispute
- July 19, 2002, the trustee filed an objection to Intira's claim based upon 502(d)
*See also, Metiom*, 301 B.R., at 636-38.

Thus, the claims in *Metiom* were transferred to the third parties prior to the claims objection
under section 502(d) of the Bankruptcy Code. The Defendants' argument that divine had
constructive notice of the 502(d) action from the trustee due to the claim objection that was filed
prior to the claim objection cannot be made. Therefore, the *Metiom* holding does not involve a
situation where an assignment of a claim occurs subsequent to the date of the claim objection or
the date an adversary proceeding is commenced seeking a 502(d) disallowance.

extent that it was so disqualified in the hands of the bank." *Id.* at 15.  Under the principle of *Swarts*, it does not matter who holds the preference.  Unless and until the estate recovers the preference, a claim is disallowed.  The *Swarts* court provided that if the claim transferor refused to repay the preference, an opportunity may be given to the claim transferee to prove its other claims and repay the preference before its claims were disallowed.  *See Id.* at 21.[13]

Although the *Swarts* court applied section 57g of the 1898 Bankruptcy Act[14] to address the issue concerning a transferred claim, the Court finds that its principle still applies to section 502(d).  It is established that "[s]ection 502(d) is drawn from section 57g of the 1898 Bankruptcy Act, . . . Section 57g did not deal with proof of claims but rather with their allowance, i.e. their right to share in the debtor's assets within the distributive scheme of the statute.  Section 502(d) has the same focus."[15]  4 Collier on Bankruptcy, ¶ 502.LH[7], at 99-100.

---

[13] According to this approach set forth by the *Swarts* court, there are no duplicate remedies provided to the debtor.  The Defendants argue that if a claim in the hands of a transferee is subject to disallowance under section 502(d) of the Bankruptcy Code, section 502(d) would inequitably expand Enron's rights, permitting Enron to disallow both the claims of a transferor that continued to hold other claims and the claims of the transferees who did not receive and cannot return avoidable transfers.

 If Enron were to prevail against Fleet regarding the avoidable transfer, the Claims in the hands of the Defendants and Fleet's other claims against Enron would continue to be disallowed until and unless payment regarding the avoidable transfer related to the bank-loan transactions were made.  A debtor can seek the payment recovery from both the transferor and the transferee at once because the transferee inherits the risks associated with the claim transfer.  If Fleet never transferred the Claims, the results as to those Claims would be the same.  Section 502(d) does not limit disallowance to only those claims related to the avoidable transfer and Enron's recovery would be capped at the number of claims that were transferred from Fleet to the Defendants.  Although Enron is seeking two actions against two different entities, there would be no duplicate remedies because the claims were transferred; accordingly, there is more than one holder of the impacted claims that are subject to section 502(d).

[14] Section 57g of the 1898 Bankruptcy Act provides that "the claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this Act, shall not be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments, or encumbrances."  4 Collier on Bankruptcy, ¶ 502. LH[7] at 99.

[15] The Defendants cite an unpublished case to support their position that a claim in the hands of a transferee is disallowed only if the transferee is liable for avoidable transfers.  *See In re Wood & Locker, Inc.*, No. MO 88 CA 011, 1988 U.S. Dist. LEXIS 19501, at *7-8.

   The Court finds the *Wood* case unpersuasive for the following reasons

(1) the *Wood* court did not cite to legislative history or case law to support its interpretation of section 502(d) that "the analytical tool to unlock the mysteries of *Sec. 502(d)* is to examine the enumerated sections to determine whether the transferee has liability. Where there is no liability under those sections, *Sec. 502(d)* is not triggered." *Id.*, *7-8. Further, the *Wood* court relied on the following to construe section 502(d) of the Bankruptcy Code

> [T]he Committee does not find in the language of any court construing *Sec. 502(d)* support for their argument that the powers of a trustee under *Sec. 502(d)*, can be expanded to hold a third party such as the Bank liable for a preference when such liability is not established by a referenced code section.

*Id.*

However, when applying section 502(d) of the Bankruptcy Code, it is not necessary for the Court to adjudicate whether a third party is liable for avoidable transfers under various sections of the Bankruptcy Code concerning avoidable transfers. Instead, the Court will determine whether a valid cause of action under a motion to dismiss for an avoidable transfer, under various sections of the Bankruptcy Code, can be asserted against the transferor. If so, the claim in the hands of the claim transferee is temporarily disallowed unless or until the avoidable transfer is adjudicated. If the transferor is liable, the avoidable transfer is submitted to the debtor's estate. Such issue has been examined in cases, such as *Metiom* (301 B.R. 634) and *Ames* (06 Civ. 0471(LAK) (Chapter 11 case No. 01-42217 (REG))).

(2) The *Wood* court also declined to consider case law decided under the 1898 Bankruptcy Act. The Court disagrees with the *Wood* court that section 502(d) of the Bankruptcy Code and 57(g) of the 1898 Bankruptcy Act have a different focus. The *Wood* court states

> Under the 1898 Act, a creditor had a choice of either keeping a preference or seeking a distribution in the bankruptcy case on account of the creditor's claim. A condition precedent to the trustee bringing the creditor within the bankruptcy court's summary jurisdiction was the filing of a proof of claim to which the trustee objected under Sec. 57(g) of the 1898 Bankruptcy Act. See e.g. 3 Collier on Bankruptcy, Para. 57.19 (14th ed., 1974). Such is not the case under the modern Code.

*Id.*

However, Collier on Bankruptcy clearly states

> Section 502(d) is drawn from [s]ection 57g of the 1898 Bankruptcy Act. . . . Section 502(d) has the same focus. [s]ection 502(d), as did [s]ection 57g of the 1898 Act, only deals with whether the claim will be allowed . . . both under the 1989 Act and under the Bankruptcy Code, creditors are given an option to disgorge the improperly transferred property and to share in the debtor's estate for the amount of their claims or to decline to file the claim and thereby forswear the right to share in the distribution of the debtor's assets while facing the risk that the trustee will take appropriate action to void the transfer and recover the affected property.

*See* 4 Collier on Bankruptcy, ¶ 502.LH[7], at 99-100.

Additionally, the *Wood* court declined to consider *Swarts* or other cases under the 1898 Bankruptcy Act because "[t]hese cases involved sureties who had received provable and traceable direct benefits by the payment of the preferences. The record before the Court does not support the traceability of the funds paid to the Bank." *In re Wood & Locker, Inc.,* 1988 US. Dist. LEXIS, at *8. The Court finds that although there were factual differences between *Swarts* and *Wood*, those factual differences do not undermine the legal principle that "the disqualification of a claim for allowance created by a preference inheres in and follows every part of the claim, whether retained by the original creditor or transferred to another, until the preference is surrendered." *See Swarts,* 117 F. at 15. This is because under that principle if there is an amount due from the transferor's avoidance action, it does not matter who holds the preference. Until and unless the estate recovers any preference, the claim is disallowed. The *Swarts* court provided that in case the claim transferor refused to repay the preference, an opportunity may be given to the claim transferee to prove its other claims and repay the preference before its claims were disallowed. *See Id.* at 21.

Moreover, whether raised as an objection to claim or in an adversary proceeding,

section 502(d) is, in essence, an affirmative defense. *In re Moore*, 323 B.R. 752, 756-57

(Bankr. D. Or. 2005) (noting *El Paso v. America West Airlines, Inc. (In re America West*

*Airlines Inc.)*, 217 F.3d 1161 (9th Cir. 2000)). "Most courts find that there is no

prohibition against the trustee asserting section 502(d) as an affirmative defense to a

claim of a creditor even if the trustee's claim is time-barred or otherwise

nonrecoverable." 4 Collier on Bankruptcy ¶ 502.05[2][a], at 58 n.5. The Court agrees

with the *Metiom* court that an affirmative defense to a claim is not destroyed by

transferring such claim. Rather, such defense to a claim will attach to each claim

transfer. *See Metiom*, 301 B.R. at 643 (stating that "[p]ermitting a claim assignment to

destroy a claim defense under section 502(d) in such fashion would be a pernicious

result. The assignment should not, and does not, affect the debtor's rights vis a vis the

claim; it is incumbent, instead, on prospective assignees to take into account possible

claim defenses when they negotiate the terms of their assignments.").

Therefore, there is no basis to find or infer that a transferee should enjoy greater

rights than the transferor.[16] On the contrary, Bankruptcy Rule 3001(e)(2) regarding the

"transfer of claim" states that "[i]f a timely objection is not filed by the alleged transferor,

---

[16] The Defendants argue that a claim assignee or transferee can, in fact, have different, as well as additional, rights than those possessed by the assignor or transferor in bankruptcy. To support this contention, they cite *Young v. Beugen (In re Beugen)*, 99 B.R. 961 (B.A.P. 9th Cir. 1989), where the court held that a transferee did not possess the right to object to a debtor's discharge even though the transferors possessed such a right. The Court finds this citation inapposite. The *Beugen* court confronted a plaintiff who had purchased claims post-petition solely in order "'to use the court as a whipping post to inflict punishment on the defendant [debtor]'" and who had become "a vexatious litigant." *Id.* at 965 (citing the bankruptcy court's opinion). The court itself recognized that its holding was limited to the unique facts of the case, stating that "[t]he right to object to a debtor's discharge is not a marketable commodity which may be purchased by one party from another in order to inflict further punishment and discomfort upon the debtor." *Id.* For that reason, the Court declines to adopt the view urged by the Defendants that this limited holding upsets the general rule that a transferee enjoys no greater rights than the transferor.

the transferee shall be *substituted* for the transferor." 11 U.S.C. § 3001(e)(2) (emphasis

added). "Substitute" means "one who stands in another's place." BLACK'S LAW

DICTIONARY 1470 (8th ed. 2004). To "substitute" means to "to put or use in place of

another." AMERICAN HERITAGE COLLEGE DICTIONARY 1377 (4th ed. 2002). Bankruptcy

Rule 3001(e) supports that a transferee cannot assert greater rights than the original

transferor.[17]

Additionally, case law has affirmed the principle that a claim transfer does not

change the nature of the claim in bankruptcy; rather, it creates a substitution of parties.

*See Carnegia v. Georgia Higher Educ. Assistance Corp.,* 691 F.2d 482, 483 (11th Cir.

1982). The legal effect of the claim is not to extinguish the underlying obligation of the

claim, but assign it to the transferee. *See Dorr Pump & Mfg. Co. v. Heath et al. (In re

Dorr Pump & Mfg. Co.)*, 125 F.2d 610, 611 (7th Cir. 1942). The Second Circuit

confirmed that an assignee succeeds to all the rights of the assignor. *See Citibank, N.A. v.

Tele/Resources, Inc.,* 724 F.2d 266, 269 (2d Cir. 1983).

Once it is established that a claim in the hands of the transferor would be subject

to disallowance, such claim in the hands of a transferee should fare no differently. Rather,

it should be disallowed to the same extent that such claim would be subject to

disallowance in the hands of the transferor. The purchase of claims in a bankruptcy

proceeding should not grant a transferee any greater rights than the transferor had

regarding those claims. The risks inherent in bankruptcy proceedings are merely shifted

to another who stands in the shoes of the original or previous claimant.

---

[17] The Defendants argue that the *Metiom* court holding contradicts the Bankruptcy Code's provisions, including Bankruptcy Rule 3001(e), regarding the recognition of claim transfers. The Court disagrees. Bankruptcy Rule 3001(e) makes it clear that a transferee is substituted for the original claim holder. While the transferees have the same rights and benefits as other similarly situated creditors in the bankruptcy proceeding, the transferees must also assume the obligations, risks and liabilities attached to the claims.

2.    Policy Concerns

Apart from the legal analysis set forth above, the Court also considers the policy

arguments advanced by both parties.  Enron argues that the consequences of shielding

transferred claims from disallowance would be to, in effect, eliminate section 502(d)

from the Bankruptcy Code because the transferors, subject to avoidance actions, could

transfer their claims whenever they seek to escape section 502(d) disallowance.  One of

the consequences would be to encourage the creditors to "wash" the claims free of any

possibility of disallowance by simply transferring them.  Enron urges the Court not to

follow the Defendants' interpretation of section 502(d) as it would render section 502(d)

nugatory.

In response to Enron's arguments, the Defendants contend that there is no

evidence to support Enron's allegation that the transferors would have an incentive to

"dump" the claims in the claims-trading market at the discounts that the trading market

demands.  Further, the Defendants urge the Court not to stretch the coverage of the

statute to deal with the policy concern of "claim washing" because there is no evidence in

the body of jurisprudence dealing with claims-transfers, in any study, nor in any law

review that suggests that "claim washing" is an actual "real world" problem.  Lastly, the

Defendants maintain that Enron may pursue the previous claimholder for recovery.

Here, the Court focuses on the policy ramifications resulting from a judicial

holding that would contradict or undermine the purpose of section 502(d).  As the Court

mentioned previously, the purpose of this section is "to preclude entities which have

received voidable transfers from sharing in the distribution of the assets of the estate

unless and until the voidable transfer has been returned to the estate." *In re Mid Atlantic*

*Fund, Inc.,* 60 B.R. 604, 609 (Bankr. S.D.N.Y. 1986), *see also*, 4 Collier on Bankruptcy,

¶ 502.05[2][a], at 58 (stating that "the purpose of section 502(d) is to promote the pro-

rata sharing of the bankruptcy estate among all creditors as well as the coercion of the

payment of judgments obtained by the trustee.  Creditors who have received voidable

transfers to the detriment of the pool should not be entitled to make additional demands

on the assets of the estate." (citations omitted)).

The Court does not speculate as to the extent to which the unavailability of the

defense of disallowance would provide alleged avoidance recipients with an incentive to

engage in "claim washing."  Nor does the Court question that the financial institutions

may well have independent business reasons[18] to transfer claims to third-party

investors.[19]  However, the Court must ensure that the policy under section 502(d) is not

undermined, even if each instance in which the section 502(d) disallowance is asserted

does not necessarily result in a furtherance of that policy.  Otherwise, such a rule of law

would require a "furtherance of policy" analysis each time a statute were applied.

Further, the Court disagrees with the Defendants' proposition that they should not

be subject to disallowance because Enron has a remedy against Fleet, a solvent

institution, which would be bound by any judgment issued by the Court.  The Defendants

urge the Court not to follow the *Metiom* holding because the holding was "stretched" so

that the debtor's avoidable transfers could be recoverable from the transferee since the

---

[18] It has been noted that claim sellers transfer claims to avoid the administrative hassle and costs of bankruptcy proceedings; or to establish a tax loss on their investment; or meet the regulatory requirements, including Basel Accord capital requirement, auditing rules for balance sheet asset write-offs or mark-to-market accounting requirements for securities.  *See* Paul M. Goldschmid, *More Phoenix than Vulture: The Case for Distressed Investor Presence in the Bankruptcy Reorganization Process*, 2005 COLUM. BUS. L. REV. 191, 206-07 (2005).

[19] In addition, the Court recognizes that the existence of a market to transfer claims is commonly viewed to provide a source of liquidity to the original or subsequent holders of the claims, including financial institutions that provide pre-petition loans to debtors.

transferor itself was in bankruptcy.  The Defendants argue that *Metiom* is distinguishable because, as indicated above, disallowance of the transferee's claim was deemed appropriate when the original transferor was itself in bankruptcy and the trustee had waived its right to seek return of the avoidable transfer from that original holder.  The Court disagrees that the *Metiom* holding is so limited.

The *Metiom* court did not limit its holding to instances where the claim transferor is insolvent and the trustee waived its right to seek return of the avoidable transfer from that original holder.  *See Metiom*, 301 B.R. at 642-43.  In fact, in the *Metiom* analysis, neither the transferor's financial situation nor the trustee's waiver to seek return from the original holder was discussed by the *Metiom* court.  The Court does not speculate as to whether the *Metiom* court considered the solvency of the claim transferor and the trustee's waiver.  The analysis is simply not there and cannot be inferred as having been the basis upon which the holding rests.

Indeed, the transferors' liability arising from avoidable actions under relevant sections of the Bankruptcy Code will not be released even if they transfer their claims to third parties.  In order to recover the avoidable transfers, the debtor or the debtor's estate can take actions directly against the transferors who received avoidable transfers pursuant to sections concerning avoidable transfers, and coerce the transferors to turn over these transfers by seeking disallowance of their claims, if any claim remains in their hands.

However, the legal possibility that the debtor or the debtor's estate can seek remedies from the solvent transferors, instead of the claim transferees, for recovering the avoidable transfers is not sufficient for the Court to rule in favor of the transferees.  *See Enron Corp. v. Ave. Special Situations Fund II, LLP (In re Enron Corp.)*, 333 B.R. 205,

226 (Bankr. S.D.N.Y. 2005). The Court is bound not to apply an interpretation of a statute that would render it ineffective. The Second Circuit explicitly stated that "there is a presumption against construing a statute as containing superfluous or meaningless words or giving it a construction that would render it ineffective." *United States v. Blasius*, 397 F.2d 203, 207 n.9 (2d Cir. 1968).

The solvency of an entity or creditor is not a factor or element required to be considered under the section 502(d) of the Bankruptcy Code. Section 502(d) does not permit affirmative relief. *See El Paso v. Am. W. Airlines, Inc. (In re Am. W. Airlines, Inc.),* 217 F.3d 1161, 1167 (9th Cir. 2000). The language in section 502(d) - "the entity from which property is recoverable " - does not imply that any analysis of such entity's solvency is relevant. The policy underlying section 502(d) is that creditors who received avoidable transfers are not allowed to participate in a distribution from the debtor's estate and not entitled to make additional demands on the assets of the estate unless and until they turn over avoidable transfers to the estate. According to that policy, regardless of the financial status of a creditor, it is not allowed to receive a distribution from the debtor's estate unless and until such creditor turns over the avoidable transfers to the estate.

Further, allowing a transferred claim in the hands of the transferees from the transferors who received avoidable transfers and did not pay or turn over the avoidable transfers would seriously undercut the purpose and policy of section 502(d). If (1) a transferor received an avoidable transfer that was not returned and transferred all of its claims or some of its claims in an amount greater than the avoidable transfer, and (2) the transferees of such claims were allowed to participate in the distribution of the debtor's

assets, it would eviscerate the purpose of section 502(d). It would permit participation in the bankruptcy distribution process, where such is unwarranted until the underlying avoidance action is resolved and any payment to the estate, if due, is made.

Lastly, the Defendants contend that a judicial determination that the Claims should be disallowed would seriously and needlessly undermine confidence in the system of post-petition transfers of claims and impact the liquidity of the market for post-petition transfers of claims. They further argue that the consequence of the disallowance of the Claims in the hands of the Defendants would create uncertainty and be burdensome to the general transferees. They base that argument, in part, on the fact that banks are involved in hundreds of transactions with a debtor, therefore, as a practical matter, it would be impossible for them to conduct due diligence on all transactions in which they purchase claims.

As the Court discussed in *In re Enron Corp.*, 333 B.R. at 229, participants in the claims-transfer market are aware of, or should be aware of, the risks and uncertainties inherent in the purchase of claims against the debtors, including the possibility of claims being temporarily disallowed under section 502(d) unless and until their predecessors turn over the avoidance transfers. They assume the liabilities arising from the claims when participating in the claims-transfer market. As noted by the Supreme Court in *Fid. Mut. Life Ins.,* the transferees are subject to the equities existing at the time of the transfer. 203 U.S. at 74. The purchase of a claim, itself, evidences the transferee's willingness to assume the risks attendant to a bankruptcy proceeding, as further discussed in Section III

of this Opinion.  The risk that full recovery may not be available is a risk factor that must

be assessed by a claim-purchaser.[20]

Further, the Defendants argue that they have no power to bind their predecessor,

i.e. Fleet, to turn over the avoidable transfers.  Here the Defendants seem to argue that the

policy of section 502(d) would not be frustrated because they, as transferees would not

have the power to coerce the transferor to return the avoidable transfers.  However,

whether the Defendants, as transferees, have such power is not a factor for a bankruptcy

court to consider when enforcing the policy of section 502(d).  The application of the

statute is not dependant upon a demonstration that its policy is being furthered in each

instance where it is being applied.  The Court notes that the Defendants, although not

addressing the extent to which they are protected under the indemnification clause

included in each of the transfer agreements, acknowledge that there are provisions in

these transfer agreements that relate to the consequences of a claim not being paid.

Further, the presence of an indemnity relationship under the contract between the

transferors and transferees signifies that the transferors understand that if the avoidable

transfers are not turned over to the estate, the claims in the hands of the transferees may

be disallowed; accordingly, the transferees may pursue the contract claims against the

---

[20] The Court notes that the risk of buying claims in a bankruptcy proceeding has been identified in the distressed debt industry for at least a decade.  "As a general legal principle, an investor who purchases a distressed claim enjoys the same 'rights and disabilities' as the original claimholder."  *See* Stuart C. Gilson, *Investing in Distressed Situations: A Market Survey.*  FINANCIAL ANALYSTS J. 8, 10 (November-December 1995).  This article was contained in the material provided to attendees at the Distressed Investing seminar in 2004 where Prof. Gilson was a participant on a panel entitled – Valuation Workshop: Distressed Airlines.  In the article, Prof. Gilson warned that a post-petition claim-purchaser inherits liabilities, including equitable subordination from the original transferor that such transferee had no role in creating.  *Id.* at 15.  "As a result of these considerations, investors who are more familiar with the borrower's operations and management (e.g., as a result of past business dealings or superior research) have an increasing comparative advantage in assessing these risks and in accurately valuing distressed claims."  *Id.*

transferor.[21]  Thus, under an indemnity arrangement, the transferees do possess the power

to coerce repayment, contrary to the Defendants' assertion.  Pressure on the transferors

remains because claim transferees can ensure that the coercive effect under section 502(d)

is preserved against the original transferors.

Further, even in the absence of an indemnity agreement, market pressures may

coerce payment of the avoidable transfer - failure to ultimately do so will limit that

transferor's access to the claim-transfer market as a seller.  The Court notes that in order

to protect the interests of both transferors and transferees, the industry has promulgated

standardized provisions relating to transferred rights, assumed obligations, and buyer's

rights and remedies.  *See* LSTA Standard Terms and Conditions on the Purchase and Sale

Agreement for Distressed Trades (the "Distressed Trades Agreement") published by the

Loan Syndications and Trading Association, Inc.[22]

---

[21] The Court notes that because of the availability of the indemnification remedy under the transfer agreement, UBS A.G. ("UBS") initiated an action (Docket No. 05-01061) against a prior claim holder, IntesaBci, S.P.A., who entered into a transfer agreement with UBS, for indemnification of the loss on disallowance and subordination of the claims arising from the alleged misconduct by Toronto Dominion Bank, a defendant under the Megacomplaint Proceeding.  Attached to the Declaration from Richard K. Milin.  *See also Enron Corp. v. Irish Allied Banks, PLC*, Adv. No. 05-01061 (Bankr. S.D.N.Y. Jan. 13, 2005).

[22] Under section 4, the seller warrants that the claims are "free and clear" of any encumbrance.  *See* Purchase and Sale Agreement for Distressed Trades published by the Loan Syndications and Trading Association as of May 1, 2005; attached to the Declaration from Richard K. Milin.  Specifically, under section 4.1 (w)(ii), "[S]eller represents and warrants to Buyer that Seller has not received any written notice other than those publicly available in the Bankruptcy Case (if any) or otherwise, that the Transferred Rights, or any portion of them, are void, voidable, unenforceable or subject to any Impairment." *Id.*  "Impairment" means "any claim, counterclaim, setoff, defense, action, demand, litigation . . . right (including expungement, avoidance, reduction, contractual or equitable subordination, or otherwise)." *Id.*  Under section 6, "Seller shall indemnify, defend, and hold Buyer and its officers, directors, agents, partners, members, controlling Entities and employees harmless from and against any liability, claim, cost.  Loss, judgment, damage or expense . . . that any Buyer Indemnitee incurs or suffers as a result of, or arising out of (1) a breach of any of Seller's representations, warranties, covenants or agreements in this Agreement . . . ."  Further, under section 6(1)(a) the buyer is entitled to indemnification from the seller if condition, including disallowance and subordination, results in buyer's receiving proportionately less in payments or distribution or less favorable treatment than other *parri passu* creditors. *Id.*  Under section 5(f), the buyer of the distressed claims warrants himself to understand and assume the risks arising from the purchase of the claims. *Id.*

The Defendants concede that they are protected by the indemnities clause under the contract. Nevertheless, they contend that transferees in the claim-transfer market should not be forced to take on extra burdens to enter into indemnities with the transferors because those indemnity clauses are not required by law. Moreover, the Defendants argue that indemnities would not be accepted by all participants in the claim transfer negotiation process. However, to increase the efficiency of the distressed debt trading market, the industry has developed a standardized contract that includes indemnities clause. To the extent that a potential purchaser believes it cannot adequately protect itself, it can decide not to purchase or demand a price at a level that reflects the perceived risks. There may well be transfers of claims that could not be reasonably protected by indemnification but whether the purchaser of a claim protects itself is not an issue with which a bankruptcy court need be involved.[23] The concern of the Bankruptcy Code is the distribution on a claim. Whether that claim results from a bank loan, a bond, or any other types of debtor-creditor relationship, it is still a claim - characteristics of which are not altered by the transfer. A transferee does not obtain greater rights from the claim than the transferor. Whether or not a transferee enters into a negotiation process of contracting with a transferor to protect its interest is a matter of choice for such transferee and does not limit the debtor's right to assert a section 502(d) defense against a claim.

---

[23] The Defendants also argue that not all categories of debt, such as bonds, are traded in the claims-transfer marketplace where the trading parties are free to negotiate representations, warranties, indemnities and other protection devices. The purchase of bonds and notes are not at issue before the Court in the instant proceeding. However, the Court notes that the post-petition purchaser of such debt instruments either knows or should know that the issuer of these securities is a debtor, so the prices of these transfers would reflect the attendant risks that the claims might be subordinated. Under those circumstances, the purchaser may well not have any available indemnity remedy against the seller, as is the case with the claims trading. But it is the market place that should address such risks in its pricing. Apprehending higher risk associated with these securities, the purchaser may demand further discounts on the prices. And based on the Court's previous policy analysis, no legal and policy basis supports the premise that transferees of bonds or notes should be treated differently than those holding transferred loan claims. All the post-petition transferees assume the risk that their claims may be subject to a section 502(d) disallowance.

The Defendants urge the Court to consider the impact on the liquidity of the distressed debt market by applying the *Metiom* holding.  However, because the market has developed self-protected mechanisms for the risks, such as the indemnity in the transfer agreement, providing a special protection to the purchasers of claims subject to disallowance in the hands of a transferor through a judicial determination would create a "special" class of claimholders.  As the Court discussed in *In re Enron Corp*., 333 B.R. at 230, the creation of such a special class has no support in the Bankruptcy Code or case law.  Further, a judicial determination to create a "special" class of claimholders with no support in the Bankruptcy Code or case law would arbitrarily interfere with the free market by providing a special premium to traders in the distressed debt market.

The Court acknowledges that the active participation of the transferees in the distressed debt market may well have a significant influence on a debtor's bankruptcy proceeding.  However, one should not lose sight of the fact that the claims trading market is not a fundamental part of the bankruptcy process, its policies, historical roots, or purpose.  It is presumably a very active "high risks" and "rewards" market that provides, among other things, liquidity to creditors – transferors; and potential high rewards for purchasers – transferees.  Even if the Defendants are correct that the judicial holding urged by Enron would have a negative impact on the claim-transfer market, it is an issue for Congress.  Congress has made a number of exceptions to the general application of bankruptcy law in situations where countervailing policy concerns warrant such.  As stated previously, it is the role of Congress, not the Court, to determine whether special protection to claims' transferees is warranted.

Additionally, if creditors who did not return the avoidable transfers were allowed to effectively receive a distribution by selling their claims and have the transferees of their claims shielded from 502(d) disallowance, then other members of the injured-creditor class would be forced to share their recoveries from the debtor's estates with such creditors.  When one balances the harm to the other members of the injured-creditor class as against the risks to a claim-purchaser who voluntarily becomes a participant in the bankruptcy process, the interests of the other members of the injured-creditor class prevail.

III.    *"Good Faith" Defense*

The Defendants argue that the application of section 502(d) would impose an unjust penalty on innocent claim transferees who are not liable for avoidable transfers. According to the Defendants, such penalty would contradict one of the fundamental policies underlying the Bankruptcy Code that protects good faith purchasers who gave value and had no knowledge of any taint or wrongdoing.  As "innocent" transferees, they are entitled to assert a "good faith" defense.

According to the Defendants, section 550 of the Bankruptcy Code, incorporated into section 502(d), prevents a trustee from recovering the transferred property from a transferee who pays value, in good faith and without knowledge of the voidability of the transfer at issue, or any immediate or mediate good faith transferee of such transferee.[24]

---

[24] Section 550(a) of the Bankruptcy Code provides that ". . . the trustee may recover, for the benefit of the estate, the property transferred . . . the value of such property, from -
    (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
    (2) any immediate or mediate transferee of such initial transferee."
Section 550(b) provides that "[t]he trustee may not recover under section (a)(2) of this section from -
    (1)  a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
    (2)  any immediate or mediate good faith transferee of such transferee.

They argue that the "good faith" defense under section 550(b) of the Bankruptcy Code, directly or by analogy, should be extended to purchasers of claims.  Further, they argue that various sections, including section 550, of the Bankruptcy Code support their view that Congress did not intend to punish a good faith transferee of a claim by applying disallowance to the transferred claim.  Essentially, the Defendants argue that not allowing such defense would be inconsistent with the policy underlying the various provisions of the Bankruptcy Code that permit a "good faith" defense by a transferee.

In the instant case, the Defendants maintain that they acted in good faith and paid fair value for the purchase of the Claims.  They further claim that there is no dispute that the Defendants did not receive or possess any avoidable transfers in the post-petition purchase of the Claims.  Finally, the Defendants assert that they acted in good faith, as their purchases were made more than one year before the Megacomplaint Proceeding was filed.  Therefore, they contend that they had no knowledge of any allegations asserted in the pending Megacomplaint Proceeding when they purchased the Claims.  The Defendants argue that they have established a "good faith" defense and therefore, the cause of action based upon disallowance should be dismissed.

With respect to the Defendants' argument seeking the extension of the "good faith" defense under section 550(b) of the Bankruptcy Code to the claims-transfer process, the Court has found that such extension is not warranted under section 510(c) of the Bankruptcy Code in *In re Enron Corp.*, 333 B.R. at 233-36.  Section 550 of the Bankruptcy Code, entitled "Liability of Transferee of Avoided Transfer," which includes

---

11 U.S.C. §550(a) and (b).  The Court notes that there is a limitation on the trustee's right to recover property from certain subsequent transferees under section 550(b).  "The scope of subsection (b) does not include an initial transferee under subsection (a)(2) of the debtor or an agent of the debtor even if the initial transferee takes in good faith and for present fair equivalent value."  *See* 5 Collier on Bankruptcy, ¶ 550.03, at 22.

the "good faith" defenses under subsection (b), specifically deals with a transfer that is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) - the avoidance sections. *See* 11 U.S.C § 550(a). Section 550(a) of the Bankruptcy Code also specifically refers to recovered property, or the value of such property, and is specifically meant to be "for the benefit of the estate." *Id.* Section 502(d) concerns the allowance of *claims against the debtor*.

The avoidance sections, and their recoveries for the benefit of the estate, are incorporated into section 502(d). Pursuant to section 502(d), a claim is disallowed unless and until property whose transfer was avoided under section 550, has been returned to the estate. Only those who received property subject to an avoidance action "for value, good faith and without knowledge of the voidability of the transfer avoided" can assert the section 550(b) exemption. *See* 11 U.S.C. § 550(b).

Section 550(b) of the Bankruptcy Code protects a "good faith" transferee from challenges to the propriety of the transfer of the property at issue. It limits the circumstances under which a trustee or debtor in possession can recover property or its value from a purchaser for the benefit of the estate. The policy underlying the "good faith" defense, which is to protect certain "good faith" purchasers from challenges to the underlying transfer, is not implicated here. This is because only a "good faith" recipient of transferred property subject to an avoidance action can assert the exemption under section 550(b) of the Bankruptcy Code. The protection would apply to a recipient who purchased *property* of the estate from Fleet that is subject to an avoidance action by Enron, for value, in good faith, and without knowledge of the voidability of the transfer.

44

However, the Defendants did not receive any property subject to any avoidance action from Fleet.  Instead, they purchased Fleet's Claims against Enron.

To the Court's knowledge, a claim as defined under section 101(5), is not, and has never been, considered property of the estate (it is being asserted against) under section 541 of the Bankruptcy Code.   Therefore, the Claims are not the property of the estate. As a claim against the estate is not property of the estate, there is no policy rationale that necessitates protection of a purchaser of a claim from the risks attendant to a bankruptcy proceeding.  This is especially so when such purchaser, by definition, voluntarily enters into such proceeding.  The policy considerations of the "good faith" defense under various provisions of the Bankruptcy Code are not implicated in the claims-transfer process.  Therefore, as stated previously, the extension of the "good faith" defense to the claims-transfer process is not warranted.

Nevertheless, for the sake of completeness, and to amplify the lack of contextual nexus of the "good faith" defense to a transferred claim, the Court will consider the rationale for allowing the Defendants, as transferees of the Claims, to assert the "good faith" defense, by analogy to section 550(b), or any other section, of the Bankruptcy Code.

As stated above, the concept of "good faith" was developed at common law, rather than defined in the Bankruptcy Code.  "Good faith purchaser," also termed "bona fide purchaser" is defined as "[o]ne who buys something for value without notice of another's claim to the property and without actual or constructive notice of any defects in or infirmities, claims, or equities against the seller's title; one who has in good faith paid

45

valuable consideration for property without notice of prior adverse claims." BLACK'S
LAW DICTIONARY 1271 (8th ed. 2004).

Section 550(b) of the Bankruptcy Code provides a "good faith" defense to any
immediate or mediate transferee of the initial transferee under subsection (a)(2). To
determine if the "good faith" defense should be applied by analogy to a transferee of a
claim, the Court will examine each prong of section 550(b) of the Bankruptcy Code to
determine whether the results warrant the relief sought by the Defendants. The three
elements for the "good faith" defense under subsections of 550(b) of the Bankruptcy
Code are (1) good faith, (2) for value, and (3) without knowledge of the voidability of the
transfer. 11 U.S.C. § 550(b).

Courts have applied an objective standard to establish the good faith of a
transferee similar to that applied under section 548(c) of the Bankruptcy Code. *See* 5
Collier on Bankruptcy, ¶ 550.02, at 23-4. Courts have found that the transferee does not
act in good faith if the transferee had knowledge of the debtor's unfavorable financial
condition at the time of the transfer. *Id.* (citation omitted). Courts have further found "a
transferee does not act in good faith when he has sufficient knowledge to place him on
inquiry notice of the debtor's possible insolvency." *Jobin v. McKay* (*In re M & L Bus.
Mach. Co.*), 84 F.3d 1330, 1336 (10th Cir. 1996) (citing *Brown v. Third Nat'l Bank (In re
Sherman)*, 67 F.3d 1348, 1355 (8th Cir. 1995)).

Regarding the third prong under subsection (b)(1) which concerns having no
knowledge of the voidability of the transfer, courts have found that a subsequent
transferee is not a good faith transferee if he knew of a debtor's financial difficulties and
the likelihood of bankruptcy. Further, such knowledge is sufficient to put such

subsequent transferee on notice. *See Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1257 (1st Cir. 1991) (holding that the transferee was not a good faith transferee because he knew of the chance of voidability due to the entity's unmanageable indebtedness and the likelihood of bankruptcy). *See also Kendall v. Sorani, et al.* (*In re Richmond Produce Co.*), 195 B.R. 455, 464 (N.D. Cal. 1996) (holding that a transferee is sufficiently put on notice if he knew of a debtor's financial difficulties and its recent buyout of debtor was highly leveraged).

Moreover, when one examines the elements of the defense, it does not protect a purchaser who either knows or should have known[25] of potential challenges to the property at issue. Thus, the criteria for determining whether a transferee acted in good faith in the purchase of claims does not solely rely upon such transferee's actual knowledge of whether the claims would be challenged. Instead, what is required under section 550(b) of the Bankruptcy Code is (1) the transferee's knowledge of the debtor's possible insolvency or unfavorable financial condition at the time of the transfer, or (2) notice that the transfer may be recovered by the trustee.

As stated previously, a purchaser of a claim, by definition, knows that it is purchasing a claim against a debtor and is on notice that any defense or right of the debtor may be asserted against that claim. Further, as discussed previously, the Defendants knew or should have known the risks associated with the purchase of a debtor's distressed debt. For example, the Defendants knew or should have known that Enron, as a debtor in possession, is under a fiduciary obligation to ensure a just and fair

---

[25] Courts construe "knowledge" by examining ". . . what the transferee objectively 'knew or should have known' in questions of good faith, rather than examining what the transferee actually knew from a subjective standpoint." *Jobin*, 84 F.3d at 1336 (citations omitted). Bankruptcy courts have also held that a transferee who reasonably should have known of a debtor's insolvency is not entitled to the "good faith" defense under section 548(c) of the Bankruptcy Code. *Id.* (citations omitted).

distribution to the creditors and, therefore, is obliged to investigate each filed proof of claim in order to determine whether there is any issue, including the disallowance of the claim, that should be raised regarding the Claims.[26]

The Defendants argue, however, that they had no knowledge that the allowance of the Claims would be challenged because their purchase was made more than one year before the Megacomplaint Proceeding was filed.  Nonetheless, the fact that Enron sought the disallowance of the Claims *more than one year* after the Defendants' purchase of the Claims cannot alter the conclusion that a purchaser of a claim assumes the risks attendant to a bankruptcy proceeding.  The purchaser has knowledge that it is purchasing a claim against a debtor and it is on notice that the debtor may assert any defense or right to challenge that claim.  Therefore, to the extent that such challenge would not be time-barred against the transferor, there is no basis to provide a time-bar defense to a transferee that would not be available to the transferor.

The knowledge that a trustee or debtor in possession will examine a claim is not speculative or hypothetical.  By contrast, in raising a section 550(b) defense, a transferee would argue, among other things, that it had no knowledge of any alleged wrongful conduct regarding the transaction between the debtor and the transferor.  If such transferee knew that a fiduciary under a court's supervision was going to investigate the "voidability" of the transaction, it would appear to the Court that such knowledge would be sufficient to defeat the defense.  If a transferee were aware that a fiduciary was obligated to conduct an investigation regarding the property at issue, the possibility of the voidability of the transfer would hardly be hypothetical or speculative.  Thus, while the

---

[26] *See* Supra, n. 20.

knowledge that the obligation of a trustee or debtor in possession to investigate matters related to claims against the estate does not equate to specific knowledge of any wrongful conduct on the part of the transferor of a claim as against the debtor, nevertheless, it is hardly speculative or hypothetical that such wrongful conduct may be alleged following an investigation by the estate's fiduciary.  Again, the investigation of claims by the estate's fiduciary is not optional - it is required.

Thus, the Court concludes that even if section 550(b) of the Bankruptcy Code applied by analogy, a claim transferee could not establish that it was merely speculative or hypothetical that an action might be commenced regarding the transferred claim.  The transferee could not establish that it "took" without knowledge or notice that an action might be brought against the claim.  Therefore, such defense would have to fail as a matter of law.

In addition, under section 550(b) of the Bankruptcy Code, "the 'value' required to be paid by the transferee is merely consideration sufficient to support a simple contract . . . .  There is no requirement that the value given by the transferee be a reasonable or fair equivalent."  5 Collier on Bankruptcy, ¶ 550.03, at 22 n. 1 (citations omitted).  Implicit in the "value" requirement of section 550(b) of the Bankruptcy Code is that the value paid is determined without knowledge of the potential voidability of the transfer of the property.  By contrast, in the claims-transfer market, the possibility of the disallowance of a claim is not regarded as purely speculative or hypothetical.  The value of a claim is set by the marketplace's view of the attendant risks, including the risk of disallowance of a claim under section 502(d), in the bankruptcy process.  A claim-purchaser must decide whether the value is justified based upon, among other things, the perceived risks of

payment.  Thus, the value paid for a claim in the marketplace has already taken into

account the bankruptcy risks either by discount or indemnification or by both.

Consequently, immunizing a transferred claim from disallowance under section 502(d)

would alter the risk factors associated with a claim and would interfere with the efficient

market by artificially enhancing the claim's value in the claims-transfer market.

The Defendants repeatedly claim that they are innocent purchasers and,

accordingly, are entitled to the "good faith" defense.  However, being an innocent

purchaser is not sufficient to qualify for the exemption under section 550(b) of the

Bankruptcy Code.  Congress made it clear that under section 550(b) of the Bankruptcy

Code, the transferee must be a good faith transferee to qualify for the exemption.  *See*

House Report No. 95-595, 95th Cong., 1st Sess. 375-76 (1977); Senate Report No. 95-

989, 95th Cong., 2d Sess. 90 (1978); *see also* 5 Collier on Bankruptcy, ¶ 550.03, at 25,

n.20.  The "good faith" defense in subsections (b)(2) is designed to "prevent a transferee

from whom the trustee could recover from transferring the recoverable property to an

innocent transferee, and receiving a retransfer from him, that is, 'washing' the transaction

through an innocent third party."  *Id.* at 23-24.  To qualify for the exemption under

section 550(b) of the Bankruptcy Code, a transferee must meet all three elements under

the statute - for value, in good faith, and without knowledge of voidability of the transfer.

As discussed previously and supported by case law, a transferee does not act in good faith

when such transferee has knowledge of a debtor's unfavorable financial condition or

bankruptcy filing at the time of transfer, or information that an investigation of the

underlying transaction could take place to alert him the risks of the transfer.  The Court

has found that the Defendants cannot establish all three elements to qualify for the "good

faith" defense.  As a result, applying the exemption here would circumvent congressional policy meant to prevent a prior transferor from "washing" the transaction through an innocent third party.

Therefore, there is no basis in law or equity to extend, either directly or by analogy, the "good faith" defense provisions of the Bankruptcy Code or common law to purchasers of claims and thereby exempt such purchasers from the relief sought based upon section 502(d).  Based upon the above analysis, the "good faith" defense asserted by the Defendants under section 550(b) is not applicable in the context of the disallowance of the Claims.

## CONCLUSION

The Court rejects the Defendants' contention that the bank-loan claims, which were transferred by the original holder who is alleged to have received avoidable transfers, cannot be subject to disallowance under section 502(d) of the Bankruptcy Code in the hands of a transferee.  Instead, the Court concludes that (1) Enron's cause of action under section 502(d) should not be dismissed even though the Court has not yet adjudicated the underlying avoidance action because section 502(d) can be used by a debtor as a defense, either in the form of an objection to a proof of claim or through commencement of an adversary proceeding, which results in a disputed claim and prevents distribution on that claim; (2) the transfer of a claim subject to disallowance in the hands of the transferor remains subject to disallowance in the hands of a transferee. Indeed, when a transferor received an avoidable transfer while it held a claim, that claim in the hands of a transferee, whether an initial or subsequent transferee, is subject to section 502(d) as if such claim was still held by the transferor.  The claim and the section

502(d) disallowance defense are linked and such relationship is not severed by a transfer; and (3) the "good faith" defense, as asserted by Defendants, is not available to a purchaser of claims.

Assuming all of the material allegations in Enron's Complaint to be true, as a matter of law, the Claims in the hands of the Defendants are subject to disallowance, pursuant to section 502(d) of the Bankruptcy Code, in connection with the avoidance actions against Fleet. As the Defendants sought dismissal based upon the application of section 502(d), dismissal of the second cause of action is not warranted. Therefore, the Defendants' motion to dismiss the second cause of action in this adversary proceeding is denied.

Counsel for the Debtors is to settle an order consistent with the Court's Opinion.

Dated: New York, New York
       March 31, 2006

                    **s/Arthur J. Gonzalez**
                    UNITED STATES BANKRUPTCY JUDGE