FILE COPY

U.S. DISTRICT COURT
FILED
SEP - 5 2006
S.D. OF N.Y.

36

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------X
                              :

**In re: ENRON CORP., et al.,**      :

                              :

      **Reorganized Debtors.**      :

                              :

                              :

----------------------------------------------------X
                              :

**ENRON CORP.,**      :

                              :

                **Plaintiff,**      :

                              :

        **-against-**      :

                              :

**SPRINGFIELD ASSOCIATES, L.L.C.**  :
**and WESTPAC BANKING**      :
**CORPORATION,**      :

                              :

          **Defendants.**      :

----------------------------------------------------X

M-47 (SAS)

**OPINION AND ORDER**

**Chapter 11**
**No. 01-16034**
**Jointly Administered**

93634

**Adversary Proceeding**
**No. 05-01025**

```
------------------------------------------------X
                                                :
ENRON CORP.,                                    :
                                                :
                            Plaintiff,          :    Adversary Proceeding
                                                :    No. 05-01029
              -against-                         :
                                                :
AVENUE SPECIAL SITUATIONS                       :
FUND II, LP, DK ACQUISITION                     :
PARTNERS, LP, RCG CARPATHIA                     :
MASTER FUND LTD., RUSHMORE                      :
CAPITAL-I, L.L.C. and RUSHMORE                  :
CAPITAL-II, L.L.C.,                             :
                                                :
                            Defendants.         :
------------------------------------------------X
                                                :
ENRON CORP., ENRON NORTH                        :
AMERICA CORP., NATIONAL                         :
ENERGY PRODUCTION                               :
CORPORATION, ENRON POWER                        :
MARKETING, INC., ENRON POWER                    :
 & INDUSTRIAL CONSTRUCTION                      :
COMPANY, NEPCO SERVICES                         :
INTERNATIONAL, INC. and NEPCO                   :
POWER PROCUREMENT COMPANY,                      :
                                                :
                            Plaintiffs,         :    Adversary Proceeding
                                                :    No. 05-01074
              -against-                         :
                                                :
BEAR, STEARNS & CO. INC. and                    :
RUSHMORE CAPITAL-I, L.L.C.,                     :
                                                :
                            Defendants.         :
------------------------------------------------X
```

```
---------------------------------------------------X
                                        :
ENRON CORP., ENRON NORTH                :
AMERICA CORP., NATIONAL                 :
ENERGY PRODUCTION                       :
CORPORATION, ENRON POWER                :
MARKETING, INC., ENRON POWER            :
 & INDUSTRIAL CONSTRUCTION              :
COMPANY, NEPCO SERVICES                 :
INTERNATIONAL, INC. and NEPCO           :
POWER PROCUREMENT COMPANY,              :
                                        :
                    Plaintiffs,         :       Adversary Proceeding
                                        :       No. 05-01105
              -against-                 :
                                        :
BEAR, STEARNS & CO. INC., DK            :
ACQUISITION PARTNERS, LP,               :
MORGAN STANLEY EMERGING                 :
MARKETS, INC., RUSHMORE                 :
CAPITAL-II, L.L.C., STRATEGIC           :
VALUE MASTER FUND, LTD. and             :
MAN MAC 3 LIMITED,                      :
                                        :
                    Defendants.         :
---------------------------------------------------X
```

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

Certain defendants and permitted intervenors in the above-captioned

coordinated adversary proceedings (the "Adversary Proceedings") request leave to

file an interlocutory appeal from two orders of the Bankruptcy Court of the

Southern District of New York (Gonzalez, J.) denying defendants' motions to

1

dismiss claims for equitable subordination and for disallowance filed by Enron

Corporation and certain of its affiliates (collectively, "Enron").[1]  In these opinions

the Bankruptcy Court held that a transferee's claim against a bankrupt's estate can

be subordinated or disallowed solely because of its predecessor-in-interest's

misconduct or failure to return avoidable transfers even when there is no finding

of wrongdoing or receipt of avoidable transfers by the transferee.

Defendants and permitted intervenors move for leave to appeal on the

grounds that both the subordination and disallowance opinions are erroneous as a

matter of law and that immediate appeal is warranted because of the uncertainty

that these rulings – if left undisturbed – would inject into the market for the sale of

postpetition claims.  They argue, in the alternative, that if a claim can be

subordinated and disallowed based solely on a transferor's acts or omissions, then

---

[1]     The published order from which leave to appeal is sought with
respect to equitable subordination is *Enron Corp. v. Avenue Special Situations
Fund, II, LP (In re Enron Corp.)*, 333 B.R. 205 (Bankr. S.D.N.Y. 2005) (the
"subordination opinion").  The Bankruptcy Court issued substantially similar
unpublished opinions in the three other adversary proceedings that have been
coordinated for the purposes of this motion, as explained *infra* in Part I of this
Opinion.  The published order on claim disallowance is *Enron Corp. v. Avenue
Special Situations Fund, II, LP (In re Enron Corp.)*, 340 B.R. 180 (Bankr.
S.D.N.Y. 2006) (the "disallowance opinion").  The Bankruptcy Court has not
issued similar opinions in the three other adversary proceedings as of today's date,
although it has so-ordered a stipulation allowing defendants and permitted
intervenors to brief the issue as if similar orders had already been entered in the
three other proceedings.

2

the Bankruptcy Court erred by not allowing a "safe harbor" defense for claims that are acquired in good faith and for value. They argue that these holdings unfairly make transferees strictly liable for their transferors' conduct.

Enron, in turn, argues that the opinions were correctly decided based on both statutory construction and equitable principles, despite the absence of any controlling authority. Enron argues that if a transferor can immunize its claims from being subordinated and disallowed by transferring them to a good faith purchaser, this would encourage claim holders who have acted inequitably or who have failed to repay avoidable transfers to "wash" their claims by transferring them. Enron asserts that such an outcome would defeat the very purposes behind equitable subordination and claim disallowance.

Although the parties have separately briefed the subordination and disallowance opinions, both motions for leave to appeal are addressed here together because they both involve the same question – whether a transferee's claim can be subordinated or disallowed solely because of the acts or omissions of its predecessor-in-interest. For the following reasons, defendants and intervenors' motions for leave to appeal are granted.

## I.    BACKGROUND

On December 2, 2001 (the "Petition Date"), Enron filed voluntary

3

petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[2] As of the Petition Date, Enron was an obligor under various credit agreements (the "Credit Arrangements") with certain participating banks (collectively, the "Transferors" or "Intervenors") whose proofs of claim were authorized by the Bankruptcy Court.[3] After the Petition Date, the Transferors, who were the original holders of claims asserted against Enron's estate, directly or indirectly transferred the claims to the defendants (or "Transferees") in this case.[4]

On September 24, 2003, Enron filed an adversary proceeding (the "MegaComplaint Proceeding," Docket No. 03-09266) against ten large bank groups, including all of the Transferors that have been allowed by the Bankruptcy Court to intervene in this motion.[5] In that action, Enron alleges that the Transferors received certain preferences and fraudulent conveyances and that they

---

[2]   *See In re Enron*, 333 B.R. at 211.

[3]   *See id.* at 212.

[4]   *See id.*

[5]   *See id. See also* Debtors' Complaint for the Avoidance and Return of Preferential Payments and Fraudulent Transfers, Equitable Subordination, and Damages, Together with Objections and Counterclaims to Creditor Defendants' Claims. Enron filed amended complaints on December 1, 2003, April 30, 2004, June 14, 2004 and January 10, 2005.

4

aided and abetted Enron's accounting fraud thereby injuring Enron's creditors.

Enron seeks recovery of the allegedly improper transfers to the Transferees and

equitable subordination of the banks' claims under the Credit Agreements based

on allegations of the Transferors' inequitable conduct. The Bankruptcy Court has

not yet adjudicated the allegations in the MegaComplaint Proceeding, which the

Transferors "vigorously contest."[6]

Enron commenced adversary proceedings in the Bankruptcy Court on

January 10, 2005, seeking to subordinate and disallow the claims against Enron's

estate, which were held by the Transferors as of the Petition Date and

subsequently transferred to and asserted by the defendants in these Adversary

Proceedings.[7] The complaints filed in these Proceedings each assert two causes of

---

[6]    Intervenor Banks' Memorandum of Law in Support of Defendants'
Motions for Leave to Appeal From the Decision of the Bankruptcy Court
Regarding Section 510(c) ("Intervenors' Subordination Mem.") at 4; Intervenor
Banks' Memorandum of Law in Support of Defendants' Motions for Leave to
Appeal From the Decision of the Bankruptcy Court Regarding Section 502(d) of
the Bankruptcy Code ("Intervenors' Disallowance Mem.") at 5.

[7]    See, e.g., Complaint for the Disallowance and Equitable
Subordination of Claims Against the Reorganized Debtor Formerly Held by
Citigroup, Inc., or its Affiliates, No. 05-01025, dated January 10, 2005 (the
"Citigroup Proceedings"). Enron filed similarly styled complaints (collectively,
the "Adversary Complaint") against: claims formerly held by Fleet National Bank
or its affiliates on January 12, 2005, No. 05-01029 (the "Fleet Proceeding");
claims formerly held by Credit Suisse First Boston or its affiliates on January 19,
2005, No. 05-01074 (the "CFSB Proceeding"); and claims formerly held by

5

action, one for the disallowance of claims under section 502(d) of the Bankruptcy
Code and the other for equitable subordination of claims under section 510(c).[8]

Enron asserts that if the claims still belonged to the Transferors, they
would have been subject to disallowance under section 502(d) and subordination
under section 510(c).[9]  Enron then argues that the transferred claims should be
subordinated and disallowed to the same extent as if the Transferors still held them
even though there is no allegation that any of the Transferees did anything
improper, nor that they received any avoidable transfers.[10]  Therefore, the sole
basis for Enron's section 502(d) and section 510(c) allegations is the alleged acts
and omissions of defendants' predecessors-in-interest coupled with the argument
that the transference of such claims should have no impact on the applicability of
disallowance or subordination.

After defendants moved to dismiss these adversary proceedings, the
Bankruptcy Court entered an order on April 27, 2005 to coordinate briefing on the
following issues: whether a claim asserted by a transferee is subject to

Barclays Bank or its affiliates on February 2, 2005, No. 05-01105 (the "Barclays
Proceeding").

[8]     *See* Adversary Complaint ¶¶ 50-61.

[9]     *See id.* ¶¶ 52-53, 58.

[10]    *See id.* ¶¶ 54, 59.

6

subordination under section 510(c) or disallowance under section 502(d) solely

because the transferor is found to have engaged in conduct that would warrant

equitable subordination or disallowance if the claims were still held by the

transferor.[11] This order also allowed the Intervenor Banks, who are named

defendants in the MegaComplaint Proceeding, to intervene for the purposes of

briefing and arguing these issues.[12] The Transferors have been and remain

interested in these adversary proceedings because they may ultimately be liable for

the claims they transferred. That is, if such claims are found to be subject to

subordination and disallowance and therefore lose monetary value, then the

Transferees are likely to seek indemnity from their Transferors.[13]

_____

[11]    *See* 4/27/05 Coordinated Scheduling and Intervention Order ¶ 2
("[W]hether a claim asserted by a transferee that acquired its claim on or after [the
Petition Date] directly or indirectly, from a defendant in the MegaComplaint
Proceeding (each, a 'MegaDefendant') that is alleged to have held such claim on
the Petition Date, is subject to (a) subordination under section 510(c) of the
Bankruptcy Code solely because such MegaDefendant transferor is found to have
engaged in wrongful or inequitable conduct that would warrant equitable
subordination of such claim in the hands of such MegaDefendant transferor, or (b)
disallowance under section 502(d) of the Bankruptcy Code to the extent that a
MegaDefendant transferor(s) that held the claim on or after the Petition Date is
found to be an entity from which property is recoverable, or a transferee of
avoidance transfers, under section 502(d) of the Bankruptcy Code.").

[12]    *See id.*

[13]    At least one of the Transferees has already brought suit against its
Transferor, referencing the suit that Enron has brought against it in the Adversary

7

On November 17, 2005, the Bankruptcy Court denied the motion to

dismiss with respect to Enron's equitable subordination claim in the Fleet

Proceeding.[14] The Bankruptcy Court made two rulings of first impression in the

Second Circuit. *First*, the court held that "a claim in the hands of a transferee,

either as an initial transferee or a subsequent transferee, who received that claim

from a transferor found to have engaged in inequitable conduct is subject to the

same equitable relief, as if, [sic] such claim were still held by the transferor."[15]

*Second*, the court held that "the policy underlying the 'good faith' defense in

various provisions of the Bankruptcy Code does not warrant the extension of such

---

Complaint and seeking damages for breach of warranty based, in part, on an indemnity clause in the contract. *See* 8/4/05 Complaint in *Westpac Banking Corp. v. Citibank, N.A.*, No. 05 Civ 6939 (MBM). This case has been transferred by the Judicial Panel on Multidistrict Litigation to the Southern District of Texas. *See* 2/15/06 Transfer Order.

[14]    *See supra* note 1. On November 28, 2005, the Bankruptcy Court issued opinions in the Citigroup, CSFB and Barclays Proceedings that are substantially identical to the November 17 equitable subordination ruling in the Fleet Proceeding. On December 20 and 23, 2005, the Bankruptcy Court entered orders implementing its equitable subordination rulings in the various adversary proceedings. On December 23, 2005, the Bankruptcy Court entered an order coordinating the Fleet, Citigroup, CSFB and Barclays Proceedings for purposes of briefing the motion for leave to appeal the orders denying the motions to dismiss the claims for equitable subordination. That order also permitted the Transferors to brief the issue and they have filed the principal memorandum in support of the motions for leave to appeal the subordination ruling.

[15]    *In re Enron*, 333 B.R. at 210.

8

defense to purchasers of claims."[16] The court also concluded that even if such a

good faith defense was available, it could not be invoked by the defendants

because as purchasers of post-petition bankruptcy claims, the transferees were on

notice of the risk that such claims could be subordinated.[17]

On March 31, 2006, the Bankruptcy Court denied the motions to

dismiss with respect to Enron's claim for disallowance in the Fleet Proceeding.

The central holding of that ruling is: "Once it is established that a claim in the

hands of the transferor would be subject to disallowance, such claim in the hands

of a transferee should . . . be disallowed to the same extent that such claim would

---

[16]   *Id.* at 211.

[17]   *See id.* The defendants who have moved for leave to appeal the
subordination ruling have either joined in the Intervenors' brief without filing their
own brief, or have filed a brief in their own name that is substantially identical to
the Intervenors' brief. The parties and motions before the Court on the
subordination ruling are: (1) Springfield Associates LLC, one of two defendants in
the Citigroup Proceeding, has filed a memorandum substantially identical to that
filed by the Intervenor Banks; (2) Bear Stearns & Co., Inc. ("Bear"), one of two
defendants in the CSFB Proceeding, has moved for leave to appeal relying solely
on the Intervenor Banks' brief; (3) Bear, DK Acquisition Partners ("DK"),
Strategic Value Master Fund, Ltd. and Man Mac 3 Limited, four of the six
defendants in the Barclays Proceeding, have moved for leave to appeal based on
their memorandum of law joining in the Intervenors' arguments; (4) DK, RCG
Carpathia Master Fund, Ltd. ("RCG"), Rushmore Capital-I, L.L.C. (Rushmore I)
and Rushmore Capital-II, L.L.C. (Rushmore II), four of the five defendants in the
Fleet Proceeding, have filed a memorandum for leave to appeal that is
substantially identical to the Intervenors' brief.

9

be subject to disallowance in the hand of a transferor."[18] As in its subordination

ruling, the Bankruptcy Court held as a matter of law that Transferees cannot assert

a good faith defense against claims for disallowance, but even if they could, the

defense would fail because Transferees had notice of the risk that the claims they

purchased might be disallowed.[19] On April 28, 2006, the Bankruptcy Court

entered an order implementing its disallowance ruling in the Fleet Proceeding.[20]

## II.    LEGAL STANDARD

### A.    Interlocutory Orders Under Section 158(a)(3)

Appeals from non-final bankruptcy court orders may be taken

---

[18]    *In re Enron*, 340 B.R. at 199. This issue has been addressed by only
two other district courts which reached opposite conclusions. *See In re Metiom,
Inc.*, 301 B.R. 634 (Bankr. S.D.N.Y. 2003) (holding that disallowance under
section 502(d) applies to the claim and not the claimant) *and Section 1102(A)(1)
Comm. of Unsecured Creditors v. Williams Patterson, Inc. (In re Wood & Locker,
Inc.)*, No. MO 88 CA 011, 1988 U.S. Dist. LEXIS 19501 (W.D.Tex. June 20,
1988) (holding that disallowance only applies to a claimant).

[19]    *Id.* at 205-08.

[20]    Because the disallowance ruling was only entered in the Fleet
Proceeding, no defendant from any other proceeding has submitted a brief
requesting leave to appeal. In the Fleet Proceeding, DK, RCG, Rushmore I and
Rushmore II have submitted a memorandum of law that is substantially identical
to the Intervenors' brief. The Transferors once again filed the principal
memorandum for leave to appeal the disallowance ruling. Therefore, the Court
will only cite to and address the arguments raised in the Intervenors' memoranda
on both motions.

10

pursuant to section 158(a)(3) of title 28 of the United States Code.[21] In deciding

whether to grant leave to appeal, reviewing courts apply the standards of section

1292(b) of title 28 of the United States Code, which governs the appealability of

interlocutory district court orders.[22] In order to permit an interlocutory appeal

pursuant to section 1292(b), the order being appealed must "(1) involve a

controlling question of law (2) over which there is substantial ground for

difference of opinion," and the movant must also show that "(3) an immediate

appeal would materially advance the ultimate termination of the litigation."[23] This

standard is strictly applied as interlocutory appeals from bankruptcy courts'

decisions are "disfavored" in the Second Circuit.[24]

        In addition, leave to appeal is warranted only when the movant

demonstrates the existence of "exceptional circumstances"[25] to overcome the

---

[21]    *See also* 28 U.S.C. § 158(c)(2) ("An appeal under subsections (a) and
(b) of this section shall be taken in the same manner as appeals in civil
proceedings generally are taken to the courts of appeals from the district courts
and in the time provided by Rule 8002 of the Bankruptcy Rules.").

[22]    *See In re Adelphia Commc'ns Corp.*, No. 03 Civ. 8848, 2006 WL
1114054, at *3 (S.D.N.Y. Apr. 26, 2006).

[23]    28 U.S.C. § 1292(b).

[24]    *In re Enron Corp.*, Nos. M-41, 01-16034, 03-93371, 03-93388, 03-
93373, 2006 WL 1222035, at *1 (S.D.N.Y. May 3, 2006).

[25]    *Williston v. Eggleston*, 410 F. Supp. 2d 274, 276 (S.D.N.Y. 2006).

11

"general aversion to piecemeal litigation"[26] and to "justify a departure from the

basic policy of postponing appellate review until after the entry of a final

judgment."[27] Interlocutory appeal "is limited to 'extraordinary cases where

appellate review might avoid protracted and expensive litigation,' . . . and is not

intended as a vehicle to provide early review of difficult rulings in hard cases."[28]

The decision whether to grant an interlocutory appeal from a bankruptcy court

order lies with the district court's discretion.[29]

"In regard to the first prong, the 'question of law' must refer to a

'pure' question of law that the reviewing court could decide quickly and cleanly

without having to study the record."[30]  The question must also be "controlling" in

the sense that reversal of the bankruptcy court's order would terminate the action,

---

[26]    *In re AroChem Corp.*, 176 F.3d 610, 619 (2d Cir. 1999). *Accord Ted Lapidus, S. A. v. Vann*, 112 F.3d 91, 95 (2d Cir. 1997).

[27]    *Flor v. Bot Fin. Corp. (In re Flor)*, 79 F.3d 281, 284 (2d Cir. 1996) (quotation marks and citations omitted).

[28]    *Liebert v. Levine (In re Levine)*, No. 94-44257, 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004) (quoting *German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995)).

[29]    *See, e.g., In re Kassover*, 343 F.3d 91, 94 (2d Cir. 2003); *DM Rothman Co., Inc. v. Cohen Marketing Int'l, Inc.*, No. 98 Civ. 7905, 2006 WL 2128064, at *1 (S.D.N.Y. July 27, 2006).

[30]    *In re Worldcom*, No. M-47, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003).

12

or at a minimum that determination of the issue on appeal would materially affect

the litigation's outcome.[31]

       As to the second prong, the "substantial ground for a difference of

opinion" must arise out of a genuine doubt as to whether the Bankruptcy Court

applied the correct legal standard.[32] The requirement that such a substantial

ground exists may be met when "(1) there is conflicting authority on the issue, or

(2) the issue is particularly difficult and of first impression for the Second

Circuit."[33] However, it is not sufficient that the relevant case law is "less than

clear" or allegedly "not in accord"[34] or that there is a "strong disagreement among

the parties."[35] The mere presence of a disputed issue that is a question of first

---

[31]    *See In re XO Commc'ns, Inc.,* Nos. 02-12947, 03 Civ. 1898, 2004 WL
360437, at *3 (S.D.N.Y. Feb. 26, 2004); *North Fork Bank v. Abelson,* 207 B.R.
382, 389-90 (E.D.N.Y. 1997).

[32]    *See In re Worldcom,* 2003 WL 21498904, at *10 (citation omitted).

[33]    *In re Lloyd's Am. Trust Funds Litig.,* No. 96 Civ. 1262, 1997 WL
458739, at *5 (S.D.N.Y. Aug. 12, 1997) (citing *Klinghoffer v. S.N.C. Achille
Lauro,* 921 F.2d 21, 25 (2d Cir. 1990)).

[34]    *North Fork Bank,* 207 B.R. at 390 (holding that disagreement
between parties about meaning of the term "business trust" did not rise to a level
of a "substantial ground for a difference of opinion," because definition of term
was not a matter of first impression in the Circuit).

[35]    *Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re
Irridium Operating LLC),* Nos. 99-45005, 01-02952, M-47, 2003 WL 21507196,
at *1 (S.D.N.Y. June 30, 2003) (stating that to demonstrate that there is a

13

impression, without more, is insufficient to satisfy this prerequisite.[36] The district

court must "analyze the strength of the arguments in opposition to the challenged

ruling when deciding whether the issue for appeal is truly one on which there is

*substantial* ground for dispute."[37] Finally, in regard to the third prong, "'[a]n

immediate appeal is considered to advance the ultimate termination of the

litigation if that appeal promises to advance the time for trial or shorten the time

required for trial.'"[38] Courts place particular emphasis on the importance of this

---

substantial ground for difference of opinion a party "must show that the issue is
difficult and of first impression and involves more than just a strong disagreement
among the parties") (quotation omitted).

[36]     *See In re Flor*, 79 F.3d at 284. The Bankruptcy Court notes in both
rulings that there is no controlling precedent. *See In re Enron*, 333 B.R. at 216
("Enron asserts that its position is based on equitable principles, not on the
holding of any particular case cited by it."); *id.* at 224 (stating that in determining
whether equitable subordination applies, "no case has limited such consideration
in the context of a transferred claim to only the conduct of the current holder"); *In
re Enron*, 340 B.R. at 195-96 ("The Court has not found any case law mandating
that the creditor who received an avoidable transfer be the same entity that
actually asserts such claim against the debtor in the bankruptcy proceeding in
order for a debtor to assert a section 502(d) disallowance against such a claim.").

[37]     *In re Flor*, 79 F.3d at 284 (quotation omitted). *Accord Marlin v. U.S.
Trustee*, 333 B.R. 14, 20 (W.D.N.Y. 2005).

[38]     *Transportation Workers Union of Am., Local 100, AFL-CIO v. New
York City Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005) (quoting *In re
Oxford Health Plans, Inc.*, 182 F.R.D. 51, 53 (S.D.N.Y. 1998)).

14

last factor.[39]

## B.    Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure is incorporated
into bankruptcy procedure by Rule 7012(b) of the Bankruptcy Rules.  A motion to
dismiss pursuant to Rule 12(b)(6) should be granted only if "'it appears beyond
doubt that the plaintiff can prove no set of facts in support of [its] claim which
would entitle [it] to relief.'"[40]  When deciding a motion to dismiss, courts must
accept all factual allegations in the complaint as true, and draw all reasonable
inferences in plaintiff's favor.[41]  "While the pleading standard is a liberal one, bald
assertions and conclusions of law will not suffice."[42]  Even though the plaintiff's
allegations are taken as true, the claim may still fail as a matter of law if it appears

---

[39]    *See Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865-66 (2d Cir.
1996) ("The use of § 1292(b) is reserved for those cases where an intermediate
appeal may avoid protracted litigation."); *Lerner v. Millenco, L.P.*, 23 F. Supp. 2d
345, 347 (S.D.N.Y. 1998) ("The Court of Appeals has emphasized the importance
of the third consideration in determining the propriety of an interlocutory
appeal.").

[40]    *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005)
(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

[41]    *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 392 (2d Cir. 2006)
(citation omitted).

[42]    *Law Offices of Curtis V. Trinko, L.L.P., v. Bell Atl. Corp.*, 309 F.3d
71, 74 (2d Cir. 2002) (quotation omitted).

15

beyond doubt that the plaintiff can prove no set of facts in support of its claim
which would entitle it to relief, or if the claim is not legally feasible.[43]

## III.   DISCUSSION

This is one of the rare cases in which an immediate review of an

interlocutory order is warranted. The three prongs of section 1292(b) are met here

and exceptional circumstances exist. The Bankruptcy Court's two rulings – that

equitable subordination and disallowance travel with the claim and that there is no

good faith defense – mean that if the Transferors' claims are found to be subject

to equitable subordination and disallowance in the MegaComplaint Proceeding,

then these findings will automatically subordinate and/or disallow defendants'

claims. Enron correctly argues that the denials of the motions to dismiss may

never need to be reviewed if the MegaComplaint defendants are not found liable

of misconduct or of having received avoidable transfers or if there are settlements

in either the MegaComplaint or Adversary Proceedings that end the actions

against the defendants.[44] But it is precisely the risk that these orders will go

___

[43]   *See Allaire Corp. v. Okumus*, 433 F.3d 248, 250 (2d Cir. 2006).

[44]   *See* Enron's Memorandum of Law in Opposition to Defendants'
Motions for Leave to Appeal From the Bankruptcy Court's Decisions Concerning
Equitable Subordination of Claims ("Enron's Subordination Mem.") at 10-11
(citing *U.S. Trustee v. Bethlehem Steel Corp.* (*In re Bethlehem Steel Corp.*), No.
02 Civ. 2854, 2003 WL 21738964, at *4 (S.D.N.Y. July 28, 2003) ("[d]eciding an

16

unreviewed that makes this an exceptional case.

With respect to the first prong of section 1292(b), the orders being appealed involve pure questions of law and there is no need to make any factual determinations in order to decide whether the rulings are correct. Assuming that the allegations against the Transferors are true – and there are no allegations of impropriety against the transferee-defendants – the question is whether Enron can prevail, as a matter of law, on its equitable subordination and disallowance claims against the defendants.[45] If the answer is yes, then the next question is whether defendants are permitted to assert the defense of being good faith purchasers. Neither of these issues require any factual determination. Finally, the orders involve a controlling question of law. If the Bankruptcy Court's rulings denying

_____

issue now, which may never need to be decided, does not help to advance the litigation")); Declaration of Richard K. Milin, plaintiff's counsel, in support of Enron's Memorandum of Law in Opposition to Defendants' Motion for Leave to Appeal From the Bankruptcy Court's Ruling Concerning Temporary Disallowance of Transferred Claims under 11 U.S.C. § 502(d) ("Enron's Disallowance Mem.") at ¶ 2 (referring to settlements in the MegaComplaint proceeding).

[45]    *See In re Enron*, 333 B.R. at 215 ("Thus for purposes of the Motion to Dismiss, the Court accepts as true all of the material allegations in the Plaintiff's complaint. Further, for purposes of this motion, the Defendants do not dispute any of the factual allegations regarding the [Transferor]. The focus of the Defendant's [sic] motion is that, even if such allegations were true, the cause of action for equitable subordination fails as a matter of law.").

17

the dismissal of Enron's two causes of action in the Adversary Proceeding are reversed, this may result in the dismissal of these actions in their entirety.

The second prong requires the Court to analyze the strength of the Intervenors' arguments to determine if there is a "substantial ground for difference of opinion."[46] The Intervenors argue that the Bankruptcy Court erred in its subordination opinion by ignoring well-established "principles of equitable subordination" found in the language of section 510(c) and its legislative history, and instead inappropriately relied on analogies to the law of assignments and the assignment of priority wage claims.[47] The Bankruptcy Court drew these analogies to support its conclusion that a transferee could enjoy no greater rights than the transferor.[48] "On the contrary, case law has affirmed the principle that under a bankruptcy proceeding, '[a]n assignee stands in the shoes of the assignor and subject to all equities against the assignor.'"[49] The Bankruptcy Court also referenced two cases holding that the assignment of a claim for wages cannot change the statutory priority of that claim; rather, the claim for wages has the same

---

[46]    28 U.S.C. § 1292(b).

[47]    *See* Intervenors' Subordination Mem. at 9-16.

[48]    *See In re Enron*, 333 B.R. at 223.

[49]    *Id.* (quoting *Goldie v. Cox*, 130 F.2d 695, 720 (8th Cir. 1942) (citing *Fidelity Mut. Life Ins. Co. v. Clark*, 203 U.S. 64, 74 (1906))).

18

priority when held by the assignee as it would have had were it still held by the wage earner.[50]

The Intervenors further argue that the analogy to the law of assignments is misguided because the Bankruptcy Court assumed the truth of its conclusion.[51] If equitable subordination is required no matter who owns the claim, then the analogy to assignment law logically follows. But if the correct interpretation of section 510(c) is that equitable subordination can only apply to a claimant because of its own wrongdoing, then the law of assignments is simply not relevant.[52]

The Intervenors also argue that the Bankruptcy Court erred in interpreting section 510(c) by selectively focusing on one part of the statute and ignoring the rest.[53] Section 510(c) states: "[A]fter notice and a hearing, the court may . . . under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another claim. . . ."

---

[50]    *See id.* at 223-24 (citing *Shropshire, Woodliff & Co. v. Bush et al.*, 204 U.S. 186, 189 (1907) and *Wilson v. Brooks Supermarket, Inc. (In re Missionary Baptist Found. of Am.)*, 667 F.2d 1244, 1247 (5th Cir. 1982)).

[51]    *See* Intervenors' Subordination Mem. at 14-16.

[52]    *See id.*

[53]    *See id.* at 9-10.

19

The Bankruptcy Court focused on the fact that section 510(c) mentions "claims"

instead of "claimants" which the Court interpreted to mean that Congress did not

intend to limit the section's application to the claimant at the time that the claim

was asserted.[54] By contrast, the Intervenors point to the importance of the phrase

"principles of equitable subordination" which they claim that the Bankruptcy

Court failed to consider.[55]

The Intervenors provide a substantial and facially persuasive

argument that the language of section 510(c) and its legislative history, as well as

case law, indicate that the "principles of equitable subordination" do not allow the

doctrine to be applied to innocent claim holders.[56]  Without deciding the merits of

this argument, I note that in its leading opinion on equitable subordination, the

Supreme Court stated that it "need not decide today whether a bankruptcy court

[54]     *See id.* at 9-14.  *See also In re Enron*, 333 B.R. at 225.

[55]     *See* Intervenors' Mem. at 9-10.

[56]     Because the Supreme Court has already explained that legislative
history is useful in interpreting the meaning of the phrase the "principles of
equitable subordination" in the context of section 510(c), the Court need not
examine whether other avenues of interpretation have been exhausted before
considering the legislative history. *See United States v. Nolan*, 517 U.S. 535, 543
(1996). *See also United States v. Boccagna*, 450 F.3d 107, 114 (2d Cir. 2006)
("Only if we conclude that statutory language is ambiguous 'do we resort . . . to
canons of construction and, if the meaning [still] remains ambiguous, to legislative
history.'") (quoting *Daniel v. American Bd. of Emergency Med.*, 428 F.3d 408,
423 (2d Cir. 2005)).

20

must always find creditor misconduct before a claim may be equitably
subordinated."[57]  But the Court did state that "the circumstances that prompt a
court to order equitable subordination must not occur at the level of policy choice
at which Congress itself operated in drafting the Code."[58]

        The important question raised by the Intervenors is whether the
Bankruptcy Court, in holding that equitable subordination may be applied to an
innocent claim holder, impermissibly operated at "the level of policy choice"
which is reserved for Congress.  Intervenors make the same argument with respect
to the Bankruptcy Court's holding that an innocent transferee cannot assert a good
faith defense to a claim of equitable subordination.  Intervenors argue that this
holding contradicts the Congressional policy choice, revealed in various sections
of the Bankruptcy Code, that protects the claims of innocent transferees.[59]

        Enron argues that the Bankruptcy Court's holding that transferring a
claim cannot immunize it from subordination is correct "as a matter of precedent,
policy, equity and common sense."[60]  To reverse this holding would authorize

---

[57]     *Nolan*, 517 U.S. at 543.

[58]     *Id.*

[59]     *See* Intervenors' Subordination Mem. at 16-18; *see also* Intervenors'
Disallowance Mem. at 17-18.

[60]     Enron's Subordination Mem. at 5.

21

creditors to "wash" their claims through transfer, thereby eliminating the remedy
of equitable subordination, which no court decision has ever endorsed.[61] Enron
maintains that the Intervenors' argument that an innocent transferee's claims can
never be subordinated is erroneous.[62] As noted earlier, the Supreme Court in
*Nolan* left open the question of whether there must always be creditor misconduct
before a claim may be subordinated. After *Nolan*, two appellate courts have held
that in certain circumstances, such as stock redemption claims and prepetition tax
penalties, creditor misconduct is not a prerequisite for the application of
disallowance.[63]

Enron next argues that purchasers of postpetition claims are well
aware of the risk that the claims they purchase may be subordinated, and protect
themselves from this risk by obtaining contractual indemnities which are not
available to those creditors whose claims arose prepetition. Relying on such
indemnities (or other contractual rights), some Transferees in these proceedings

[61]    *See id.* at 26-28.

[62]    *See id.* at 32-35.

[63]    *See id.* at 33 (citing *SPC Plastics Corp. v. Griffith (In re Structurelite
Plastics Corp.)*, 224 B.R. 27, 35 (6th Cir. B.A.P. 1998) and *In re Lifshultz Fast
Freight*, 132 F.3d 339, 348 (7th Cir. 1997)).

22

have sued their Transferors for transferring tainted claims.[64] Enron argues that this

explains why the Transferors have taken the lead in litigating this motion: "the

Transferors are asking this Court to make an immediate ruling that Enron must pay

'innocent' claim assignees so that the Transferors – despite the inequitable

conduct alleged in [MegaComplaint Proceeding] – do not have to. Nothing could

be more inequitable."[65] Enron asserts that the subordination ruling correctly held

that as a practical matter, it would be unduly burdensome to require bankruptcy

estates to make distributions to all innocent claimants and then bring an action

against transferors for recompense. Finally, Enron argues that the Congressional

policy of protecting innocent transferees is best served by protecting Enron's

prepetition creditors who have acted in good faith and by not requiring them to

share their recoveries from the estate with creditors, or their transferees, who

"acted inequitably to the innocent creditors' detriment."[66]

　　　　This summary of the various arguments reveals a substantial ground

for a difference of opinion on a difficult issue of first impression in this circuit.

Thus, the requirements of the second prong are met with respect to the issues

---

[64]    *See id.* at 36.

[65]    *Id.* at 27-28.

[66]    *Id.* at 41.

23

raised on the appeal of the subordination ruling.

The same is true of the disallowance ruling. The Intervenors argue

that the Bankruptcy Court ignored both the plain language of, and the purpose

behind, section 502(d), relying instead on its own policy preferences.[67] Section

502(d) states:

> [T]he court shall disallow any claim of any entity from
> which property is recoverable under section 542, 543, 550,
> or 553 of this title or that is a transferee of a transfer
> avoidable under section 522(f), 522(h), 544, 545, 547, 548,
> 549, or 724(a) of this title, unless such entity or transferee
> has paid the amount, or turned over any such property, for
> which such entity or transferee is liable under section
> 522(I), 542, 543, 550, or 553 of this title.

The Bankruptcy Court interpreted this statute to mean that disallowance applies to

a claim without reference to its holder: "This statutory reference is to *any claim.*

There is no requirement that a claim subject to a section 502(d) disallowance be

related to an avoidable transfer."[68]

The Intervenors argue that the Bankruptcy Court erroneously isolated

the words "any claim" from the rest of section 502(d) and that the correct statutory

reference is to "any claim of any entity that is a transferee of a transfer avoidable"

---

[67]    *See* Intervenors' Disallowance Mem. at 1-3.

[68]    *In re Enron*, 340 B.R. at 194.

24

under the Bankruptcy Code.[69] The statutory language does not focus on "any

claim" but rather on "*any entity*" that has received an avoidable transfer. Because

there are no allegations that the defendants have received any avoidable transfers,

their claims cannot be disallowed by the first clause of section 502(d). This

reading is further supported by the final clause of section 502(d) ("unless such

entity . . . .") which explains that disallowance cannot be applied when the entity

has "turned over" any transfer for which it is liable. The Intervenors argue that

this last clause again shows that the focus of section 502(d) is on the entity and not

the claim, because only the entity that has received the avoidable transfer is

capable of turning it over so as to prevent the claims from being disallowed.[70]

The legislative history of section 502(d), as well as the case law,

indicate that its purpose is to promote a fair distribution of the estate's assets by

disallowing a creditor from asserting a claim until he pays the estate what he

owes.[71] The Intervenors argue that this purpose is not implicated here because the

Transferors who allegedly received avoidable transfers are not asserting claims

---

[69]     *See* Intervenors' Disallowance Mem. at 10 (quoting § 510(d)).

[70]     *See id.* at 11.

[71]     *See id.* at 14-16 (citing, *inter alia, Campbell v. United States (In re Davis*), 889 F.2d 658, 662-63 (5th Cir. 1989); *Sharp v. Chase Manhattan Bank USA, N.A. (In re Commercial Fin. Servs., Inc.*), 322 B.R. 440, 452 (N.D. Okla. 2003)).

25

against the estate while the Transferees who are asserting claims are not alleged to

have improperly received transfers.[72] The Bankruptcy Court found that the

coercive purpose of section 502(d) in forcing debts to be repaid could be

effectively met by disallowing defendants' claims, thereby forcing them to seek

indemnity from the Transferors.[73] The Transferors argue that this indirect attempt

at coercion will not be effective when transferees lack indemnity agreements and

that it contravenes the Congressional policy choice of protecting good faith

purchasers.[74] Finally, the Intervenors claim that the Bankruptcy Court erroneously

relied on policy justifications in holding that claims can be disallowed regardless

of who holds them.[75]

        Enron, by contrast, argues that the Bankruptcy Court correctly

applied the disallowance provision of section 502(d) by refusing to allow creditors

_____

[72]    *See id.* at 15.

[73]    *See In re Enron,* 340 B.R. 202-03.

[74]    *See* Intervenors' Disallowance Mem. at 17.

[75]    *See In re Enron,* 340 B.R. at 205 ("When one balances the harm to
the other members of the injured-creditor class as against the risks to a claim-
purchaser who voluntarily becomes a participant in the bankruptcy process, the
interests of the other members of the injured-creditor class prevail.").

                                        26

to immunize their claims by transferring them.[76] Enron argues that bankruptcy law has consistently found that transferees cannot stand in any better position than their assignor.[77] For example, a creditor's rights are generally determined by reference to the petition date, such that postpetition transferors are unable to alter a claim's characteristics.[78] Enron disputes Transferors' assertion that no case before *Metiom* disallowed a transferred claim, noting that while "the Transferors may have found no *published opinion* directly on point, [ ] that may mean only that no one *disputed* that transferred claims could be disallowed."[79] Finally, Enron argues that transferees can protect themselves from the risk that their claims will be disallowed through contractual provisions. But if transferred claims are not subject to disallowance, then bankruptcy estates are unprotected as they cannot prevent disreputable creditors from transferring their claims.[80] For these reasons, the disallowance motion meets the requirements of the second prong of section

---

[76] *See* Enron's Disallowance Mem. at 2-3; *see id.* at 15-16. *See also In re Metiom*, 301 B.R. at 643 (holding that allowing an assignment to immunize a claim would be a "pernicious result").

[77] *See* Enron's Disallowance Mem. at 19-20.

[78] *See id.* at 20.

[79] *Id.* at 19.

[80] *See id.* at 20-21.

27

1292(b) because the issues for appeal raise substantial grounds for dispute.

          The third prong is easily met, because granting leave to appeal both

the subordination and disallowance opinions may result in the disposition of the

Adversary Proceedings in their entirety. In its Adversary Complaint, Enron

alleged only two causes of action, one for subordination and one for disallowance.

The Bankruptcy Court ruled that both causes of action are viable. If both of these

opinions are reversed, Enron's case may be dismissed.

## V.    CONCLUSION

          For the foregoing reasons, the defendants and Intervenors' motions

for leave to appeal are granted. The parties are to agree on and submit an

expedited briefing schedule no later than September 12, 2006.

                                        SO ORDERED:

                                        Shira A. Scheindlin
                                        U.S.D.J.

Dated: New York, New York
          September 5, 2006

                                        28

**- Appearances -**

**For Enron Corp., et al., debtors-in-possession:**

Albert Togut, Esq.
Scott E. Ratner, Esq.
Richard K. Milin, Esq.
TOGUT SEGAL & SEGAL LLP
One Penn Plaza
Suite 3335
New York, NY 10119
Telephone: (212) 594-5000

**Special Litigation Counsel for Enron Corp., et al., debtors-in-possession:**

H. Lee Godfrey, Esq.
Kenneth S. Marks, Esq.
Mary Kathryn Sammons, Esq.
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366

**Special Litigation Counsel for Enron Corp., and Enron North America Corp., debtors-in-possession and plaintiffs:**

Richard L. Wasserman, Esq.
VENABLE LLP
1800 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, MD 21201
Telephone: (410) 244-7400

**For defendants Rushmore Capital - I, L.L.C.
Rushmore Capital - II, L.L.C.:**

David Lee Evans, Esq.

29

Theodore J. Folkman, Esq.
HANIFY & KING, P.C.
One Beacon Street
Boston, MA 02108
Telephone: (617) 423-0400

**For defendants Strategic Value Master Fund, Ltd.
and Man Mac 3 Limited:**

Jonathan L. Hochman, Esq.
SCHINDLER COHEN & HOCHMAN LLP
100 Wall Street, 15th Floor
New York, NY 10005
Telephone: (212) 277-6300

**For defendant DK Acquisition Partners, LP:**

Martin Eisenberg, Esq.
Anna Karpman, Esq.
EMMET, MARVIN & MARTIN, LLP
120 Broadway, 32nd Floor
New York, NY 10271
Telephone: (212) 238-3000

**For defendant Bear, Stearns & Co. Inc.:**

Stephen M. Sinaiko, Esq.
Jonathan A. Popolow, Esq.
KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 715-9100

**For defendant Springfield Associates, L.L.C.:**

David Parker, Esq.
Edward Grosz, Esq.

30

KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
551 Fifth Avenue
New York, NY 10176
Telephone: (212) 986-6000

**For Intervenors Citibank, N.A.:**

Stephen J. Shimshak, Esq.
Douglas R. Davis, Esq.
Brad S. Karp, Esq.
Claudia L. Hammerman, Esq.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000

**For Intervenors Barclays Bank PLC and its Affiliates:**

Hugh McDonald, Esq.
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 610-6300

David H. Braff, Esq.
Michael T. Tomaino, Jr., Esq.
Jeffrey T. Scott, Esq.
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000

**For Intervenors Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and Merrill Lynch Capital Services, Inc.:**

Herbert Washer, Esq.
William J. F. Roll III, Esq.

31

Seth M. Kean, Esq.
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000

**For Intervenors Credit Suisse First Boston LLC and its Affiliates**:
Richard W. Clary, Esq.
Julie A. North, Esq.
Darin P. McAtee, Esq.
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Telephone: (212) 474-1000

**For Intervenor The Toronto-Dominion Bank:**

John H. Maddock, III, Esq.
McGUIREWOODS LLP
1345 Avenue of the Americas
Seventh Floor
New York, NY 10105-0106
Telephone: (212) 548-2100

Robert Plotkin, Esq.
Dion W. Hayes, Esq.
McGUIREWOODS LLP
Washington Square
1050 Connecticut Avenue, N.W.
Suite 1200
Washington, D.C. 20036-5317
Telephone: (202) 857-1700

**For FleetBoston Financial Corp., Fleet National Bank, DK Acquisition
Partners, L.P., Rushmore Capital-I, L.L.C., Rushmore Capital-II, L.L.C., and
RCG Carpathia Master Fund, Ltd.:**

32

David S. Elkind, Esq.
Marc F. Skapof, Esq.
ROPES & GRAY LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 841-5700

Matthew M. Burke, Esq.
Stephen Moeller-Sally, Esq.
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
Telephone: (617) 951-7000